RICHARD W. DUHON V. THE STATE.

No. 20104.   Delivered February 1, 1939.
Rehearing Denied March 8, 1939.

The opinion states the case.

*John E. Lyle,* of Corpus Christi, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for assault with intent to murder; penalty assessed at confinement in the penitentiary for three years.

Jean Montgomery, the alleged injured party, testified that she met the appellant on the night of October 11, 1937, at the Roosevelt Grill in the city of Corpus Christi, Texas; that after drinking some whisky they went to the Ritz Theater. After the show was over (about eleven o'clock) they went to her room where she changed clothes for the purpose of going to a dance at the Casino Night Club. They drove out on Ocean Drive to a place called Flour Bluff, where appellant purchased a pint of whisky. They then turned around and drove back towards Corpus Christi. While on their way back, they stopped along the highway and engaged in the act of sexual intercourse. When they returned to Corpus Christi, then went to a "pig stand" and ate some shrimp cocktail, after which they again drove out on Ocean Drive. Appellant stopped his car at a certain point and they engaged in the second act of intercourse. According to the prosecutrix: "The defendant didn't ask me to do anything at that time; he just forced me, and we had intercourse there at that time."

The prosecutrix testified that after the act of intercourse mentioned they drove away down the highway and "pulled off the side of the road toward the bay." They stopped and the appellant attempted to have unnatural sexual intercourse with her, but failing to do so, he then attempted to have her

perform one on him, which she refused to do. She then jumped out of the car and started running toward the highway. As she was running, she glanced over her shoulder and saw the lights of a car coming toward her. The next thing she knew she was getting up; that she remembered the car striking her After the appellant ran over her with the car, she saw the tail light thereof as she was getting up; that this was the last she saw of the car. The appellant did not come back to pick her up that night or at any other time after he ran over her. She was compelled to lay out in the road from the time she was run over (which was about one o'clock in the morning) until about noon of the following day, when she was picked up and taken to Corpus Christi in an ambulance. She contracted bronchial pneumonia from lying out in the road. She suffered a broken pelvis bone and a broken leg from being run over by the appellant's car. Her left leg was broken in eight places. As a result of her injuries, she was confined in the hospital for about ten weeks and also in a nursing home for about nine weeks longer.

The testimony of the appellant is in substance the same as that of the prosecutrix with certain exceptions. He claimed that each act of intercourse was had with the consent of the prosecutrix; that after the second act of intercourse the prosecutrix got out of the car and walked over to the edge of the cliff near which the car was parked; that she took off one of her shoes and threw it on the bank, wiggled her feet and said: "I am going to end it all." Appellant said he did not think she was serious about jumping off the bluff. He got in his car and started the motor in order to induce her to come back and get in the car, but she made no attempt to get back in it. He then drove to Corpus Christi. When he had almost reached the city, he went back after her. He said he found her on the edge of the highway and helped her into the car; that she "mumbled incoherently" and that he understood her to say that she wanted to visit a girl friend who was in the hospital. He told her that "there was no sense in visiting anyone that hour in the morning." He decided to "pull off the road for her to sober up" as he did not want to take her home in a drunken condition. She said, "Excuse me," and then got out of the car. She walked around and sat down in front of the automobile. Appellant asked her, "What in the world is the matter." She replied: "Nothing. I want you to go away and leave me alone." Appellant then said: "That sounds awfully good to me. I have been trying to take you home (for) three hours, and you won't go. So I will just go off and leave you."

Appellant got in his car and backed it up. He had to "see-saw" back and forth several times to turn the car around in the road. She was still sitting in the road and "made no motion to come and get in the car." Appellant then drove home. After lying across the bed for a while, he got up and drove his car back as far as Flour Bluff, but failed to find the prosecutrix on the highway. He then drove his car off the highway and went to sleep. About 7:30 o'clock the next morning he woke up and went back to his room where he slept until four o'clock in the afternoon, at which time he was awakened by some boys who came to get him to go to work. He went out to Flour Bluff and started to work when the officers came and arrested him.

Appellant denied that he ran over the prosecutrix with his car; that he just left her out in the country about a mile and a half or two miles from town. He also denied that he used any force during the second act of intercourse with the prosecutrix. He testified that the third act of intercourse testified to by the prosecutrix did not occur. On cross-examination the appellant testified: "I wasn't in a stage of intoxication when I was capable of operating an automobile or in full possession of my faculties. I remember everything that happened. I couldn't be mistaken about anything I have testified here."

Robert Bluntzer testified that about noon on the 11th of October, 1937, he had occasion to travel on Ocean Drive; that he was stopped by one, Mike Barrera, and accompanied him to the place where the prosecutrix was found lying on the road. She seemed to be suffering and was about half unconscious. There were marks on the ground made with the side of a shoe indicating that she had been pushing her body for a distance of some fifteen or twenty feet.

Bob Newman, a deputy sheriff, who was called to the scene, testified that he saw tracks on the ground which had been made by the "scraping of the elbow" and the sharp heel of a woman's shoe; that these tracks extended from the bay toward the highway for a distance of about fifteen feet.

No bills of exception are found in the record complaining of any matter of procedure. The controverted issues of fact were submitted to the jury in the charge of the court against which no objections were addressed and resolved by them in favor of the State.

Perceiving no error upon which to predicate a reversal of the conviction, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

KRUEGER, JUDGE.—Appellant, in his motion for rehearing, asserts that we erred in affirming the judgment of the trial court because there is no evidence to show that he, at the time he struck Mrs. Montgomery, entertained the specific intent to kill her.

The intent rests exclusively within the mind of the person committing the offense, the existence of which is inferred from the acts committed or words spoken. The law presumes that a person intends that which is the natural or probable consequence of his act. If a person is driving an automobile in such manner as to show a reckless disregard for the life of another, and in so doing runs upon or over the person who happens to be in the course of his travel, it shows an evil disposition from which an inference would arise that he intended the natural or probable consequences of his act. An automobile may not be a deadly weapon per se; yet if from the manner of its use it is likely or calculated to produce death, the presumption obtains that death was intended.

The testimony shows that appellant wanted Mrs. Montgomery to permit him to do a certain act to which she objected; that he then wanted her to do an act which was offensive to her and which she also declined to perform. She then got out of appellant's automobile and started walking up. a narrow lane leading to the highway. Appellant, in his car, followed her up the narrow lane with the lights of his car shining brightly where there was nothing to have prevented him from seeing her going up that lane. Yet he ran upon and over her, inflicting grave and serious injuries upon her, and as she lay upon the ground screaming, he drove away leaving her lying helpless in a secluded spot. The instrument used, as well as the wounds inflicted, may be looked to in determining the intent of the offending party. We think this testimony is such that the jury could reasonably draw the conclusion that appellant intended to kill Mrs. Montgomery, and no doubt she would have died if some Mexican had not discovered her the next day about noon. What other conclusion could any fair minded jury arrive at from the testimony?

Being of the opinion that the case was properly disposed of on the original submission, the appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.