**Ralph Waldo HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55069.**

Court of Criminal Appeals of Texas.

En Banc.

Feb. 15, 1978.

Rehearing Denied March 22, 1978.

Steven G. Condos, Dallas, for appellant.

Henry Wade, Dist. Atty., William M. Lamb, Norman Kinne and Rider Scott, Asst. Dist. Attys., Dallas, for the State.

**464**

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for the offense of aggravated robbery. The jury assessed punishment at thirty-five years.

Appellant, by way of pro se brief, urges that the evidence is insufficient to show that the weapon used was a deadly weapon.

Appellant was indicted for the offense of aggravated robbery under V.T.C.A. Penal Code, Sec. 29.03(a)(2), with the indictment reading, in pertinent part, that on or about June 5, 1976, the appellant

"  .  .  . did unlawfully, then and there while in the course of committing theft and with intent to obtain and maintain control of the property, of ROBERT J. HARPER, hereinafter called 'Complainant' the said property being current money of the United States of America, without the effective consent of the Complainant and with intent to deprive the said complainant of said property, did then and there by using and exhibiting a deadly weapon, to-wit: a knife, intentionally and knowingly threaten and place the said complainant in fear of imminent bodily injury."

On September 7, 1976, appellant entered a plea of not guilty before a jury, and represented himself pro se during the trial of this case, with the assistance of court-appointed counsel. The State's evidence reflected that the complaining witness, Robert J. Harper, had been to a Dallas nightclub on the evening of June 4, 1976, leaving that establishment at approximately 1:00 a.m. on the morning of June 5th to walk to his home a few blocks away. While walking down the street, he was accosted by appellant, who stated, "I have a knife and I want your money, your billfold." A struggle ensued during which the complaining witness received cuts on his right elbow, his chin, and under his throat. The appellant managed to secure Harper's billfold during the struggle and, as appellant attempted to flee the scene, he was arrested by a nearby police officer. At the time of appellant's arrest, he was searched and a pocket knife with a four-inch blade was found on his person.

The complaining witness further testified that, while he never saw appellant with a knife, he believed that appellant did have a knife, and that the injuries incurred had left scars on his body. No medical testimony was presented concerning the severity of the injuries. The complaining witness stated that he did not go to a hospital or receive any medical attention or stitches on these cuts.

Officer E. W. Smith, an eyewitness to the incident in question, testified, "  .  .  . I felt like one of them had some type of weapon, but it was dark and I couldn't tell for sure." Smith related that he felt that appellant was the one with the weapon because of "The way he made a movement towards the victim. * * * It was kind of a slashing move." The record reflects that the prosecutor then asked, "  .  .  . Indicating that he might have had a knife or something to slash with?" and Smith answered, "Yes, sir."

Officer James D. Mercer testified that he arrived at the scene after appellant had been taken into custody. His testimony relative to Harper's injuries reflects the following:

"Q. [Prosecutor] Did you have occasion to observe any wounds on Mr. Harper?

"A. Yes, sir, he had several.

"Q. Okay. Do you recall any in particular?

"A. I saw them all.

"Q. Where were they, as best you recall?

"A. There was a slash wound on the right side of his neck about two or three inches long; there was a small nick here; he had a cut on his elbow; and he raised his shirt to tell us about a cut on his stomach.

*      *      *      *      *      *

"Q. Did they appear to be serious to the extent that he would require any hospitalization or stitches or anything like that?

"A. No, sir, they weren't that serious."

Mercer stated that he had over sixteen years of experience as a police officer, had seen "many injured in every type of way," and that "at least three of these wounds appeared to be cut wounds. . . ."

Appellant urges that under our recent decision in *Danzig v. State*, Tex.Cr.App., 546 S.W.2d 299, the evidence is insufficient to sustain a conviction for aggravated robbery since the knife was not a deadly weapon per se and there was no testimony that the injuries inflicted upon the complaining witness could have caused "death or serious bodily injury."

V.T.C.A. Penal Code, Sec. 1.07(a)(11), defines "Deadly Weapon":

"(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

The dissent, in urging that the evidence is sufficient to sustain the conviction and that *Danzig* should be overruled, states that while this Court has often held that a pocket knife is not a deadly weapon per se, it has held with equal frequency that it may qualify as a deadly weapon through the mode and manner of its use and that the wounds inflicted on the injured party may be looked to in determining this issue. We agree with this statement of the law and examine cases cited by the dissent for the proposition that the evidence herein is sufficient to prove deadly weapon.

In *McElroy v. State*, Tex.Cr.App., 528 S.W.2d 831, our opinion sets forth the following relative to the wound and weapon:

"Dr. Terrell, who treated the injury, testified the weapon used by appellant was capable of causing death and could be a deadly weapon through the manner of its use. He further testified that the stab wound was six inches long, penetrated to the cartilage of the rib cage, and required approximately thirty sutures to close it."

In *Abels v. State*, Tex.Cr.App., 489 S.W.2d 910, our opinion includes the following:

"Appellant then cut his wife across the throat with what he described as a 'pocket knife' and chased her across the room, stabbing her a total of 15 times. Her injuries consisted of a ruptured kidney and an injured spleen which were surgically removed, and a punctured lung, stomach and intestines. Dr. Ferris, who treated the injured party, testified that the wounds were serious and the injured party would have died if she had not received prompt medical attention."

The distinction between these two cases and the instant case is readily apparent.

In *Ellison v. State*, Tex.Cr.App., 419 S.W.2d 849, a robbery with a deadly weapon conviction was affirmed where the defendant held a knife to the back of the victim and threatened to kill her. No contention was advanced as to the sufficiency of the evidence and the opinion does not purport to evaluate the sufficiency of the evidence. The weapon used in *Ellison* is merely described as "a knife" without regard to the type of knife or length of blade. In the instant case, after Harper had testified that appellant said, "I have a knife, I want your billfold," the record reflects the following:

"Q. [Prosecutor] Did he say that he would do anything to you if you didn't give him your billfold?

"A. No, sir."

*Gillingham v. State*, 167 Tex.Cr.R. 116, 318 S.W.2d 659, is probably the most persuasive case cited by the dissent. On appeal from an aggravated assault conviction, the defendant urged that the evidence was insufficient to show that the knife was a deadly weapon. This argument was rejected as follows:

"Used to slash in the vicinity of the face and neck, there appears no question but that a switchblade knife with blade 3¼ inches in length and ½ inch in width would come within the definition of a deadly weapon."

The opinion in *Gillingham* noted that the wound produced required six stitches to

close. In *Gillingham*, the cases of *Fisher v. State*, 68 Tex.Cr.R. 297, 151 S.W. 544, and *Brown v. State*, 155 Tex.Cr.R. 233, 233 S.W.2d 578, were cited for the proposition that whether a weapon is a deadly weapon (if not a deadly weapon per se) may be shown by the manner of its use.

In *Fisher*, the wounds were inflicted with a "No. 8 saw" and were described as "a cut on his head something like five inches long, a scalp wound, the bones not being in any way injured or hurt; also had a wound on his left hand and a slight one on his right arm. The doctor says the wound on the right arm amounted to nothing. The other wounds were not serious. The physician, Dr. Mathes, who attended Killough, [the victim] stated that he was up in a couple of days and about his business."

In *Fisher*, reversal resulted, the opinion reciting, "The wounds were not serious, and there is no evidence from any witness that the saw was a deadly weapon; and it is not a deadly weapon per se."

In *Brown*, upon appeal from a murder without malice conviction, it was held that a shotgun fired through a door was not a deadly weapon per se. The use of the gun neither produced death or serious bodily injury, and the manner of its use was such that "more shots failed to penetrate the door than passed through the door." The injured party was not hospitalized by the shots which struck her and, while she stated she went to a doctor, the extent of injuries was not shown.

In *Reed v. State*, 149 Tex.Cr.R. 208, 192 S.W.2d 890 (not cited by the dissent), reversal resulted on appeal from a conviction for assault to murder. The major portion of the opinion sets forth the brief of the State's attorney in which error is confessed. In pertinent part, it states:

"Obviously, we think, the knife was not per se a deadly weapon, and yet we recognized the general rule that where the instrument itself is not a deadly weapon, the intent to kill may be established by other facts—that the wounds inflicted may be looked to in determining whether or not the knife was a deadly weapon;

but, in view of the fact that the testimony of the attending physician indicates that the wounds inflicted were not of a serious nature unless infection set in, and in view of the further fact that there is no proof of a specific intent to kill, we are inclined to seriously doubt that the evidence is sufficient to support a conviction . . . ."

In *Davis v. State*, Tex.Cr.App., 532 S.W.2d 626, and *Washington v. State*, Tex. Cr.App., 518 S.W.2d 240, this Court affirmed convictions for aggravated robbery where a knife was displayed but not used during a robbery. No contention was advanced as to the sufficiency of the evidence in either case and therefore it was obviously unnecessary for the opinions to address or fully set forth the evidence necessary to sustain the convictions.

In the instant case, the weapon used was not a deadly weapon per se. Serious bodily injury was not shown. We must therefore look to the "manner of its use or intended use" in determining whether the pocket knife herein was a deadly weapon.

The injured party never saw a knife, merely relating that appellant told him, "I have a knife, I want your billfold," and stated that appellant made no threat to use the knife if he did not give him the billfold.

Officer Smith witnessed the incident in question and did not see a knife. He testified, "I felt like one of them had some type of weapon . . . " and described appellant's action, "The way he made a movement toward the victim. * * * It was kind of a slashing move."

We find that the evidence regarding the "manner of its use or intended use" is insufficient to show that the pocket knife was capable of causing death or serious bodily injury. Thus, the evidence is insufficient to show that appellant used or exhibited a "deadly weapon" as charged in the indictment.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

Appellant was convicted for the offense of aggravated robbery as denounced by V.T.C.A., Penal Code, Section 29.03.

The majority is in error in reversing this conviction. The knife used had a four-inch blade. To say that a four-inch bladed knife, whether it is a pocket knife or some other type, is not a deadly weapon unless an expert so testifies is to strain the bounds of reason. V.T.C.A., Penal Code, Section 1.07(a)(11)(B), includes in the category of deadly weapons anything that in the manner of its use or *intended use is capable of causing death or serious bodily injury*.

The present penal code, V.T.C.A., Section 46.01(7), provides:

"'Knife' means any bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument."

With this and the provision of Section 1.07(a)(11)(B), supra, the Legislature does not require that the manner of the use of a knife with a four-inch blade must be considered to determine if it is deadly.

If a knife with a four-inch blade is not capable of producing serious bodily injury or death, why are there so many bodies in our cemeteries as a result of injuries received from such a weapon?

In *Gay v. State*, 134 Tex.Cr.R. 356, 115 S.W.2d 929 (1938), Judge Krueger wrote for the Court:

"It occurs to us that a knife or other instrument which is capable of inflicting a wound four inches deep is an instrument reasonably calculated to produce death."

While this Court has often held that a pocket knife is not a deadly weapon per se, *Windham v. State*, 530 S.W.2d 111 (Tex.Cr.App.1975), it has held with equal frequency that it may qualify as a deadly weapon through the mode and manner of its use and that the wounds inflicted on the injured party may be looked to in determining this issue. *McElroy v. State*, 528 S.W.2d 831 (Tex.Cr.App.1975); *Abels v. State*, 489 S.W.2d 910 (Tex.Cr.App.1973).

At a time when the sufficiency of the evidence was always considered by this Court whether it was raised or not, this Court in *Ellison v. State*, 419 S.W.2d 849 (Tex.Cr.App.1967), held the evidence was sufficient to uphold a conviction for robbery with a deadly weapon when a knife was exhibited during the robbery. Article 1408 of the 1925 Code, like the present code, provided for additional punishment if robbery was committed by using or exhibiting a deadly weapon.

In the present case, the manner in which appellant used a four-inch knife to inflict injury on the complaining witness qualified that knife as a deadly weapon. The testimony of Officer E. W. Smith reflected that he saw appellant slashing at the complainant, Robert L. Harper, at the time of the offense. The officer observed that, in addition to the wounds inflicted to his stomach and elbow, Harper suffered a slash wound to the throat approximately three inches in length. Harper himself testified to having received knife wounds to the stomach, elbow, chin and throat and displayed to the jury the scars remaining from these cuts. In *Gillingham v. State*, 318 S.W.2d 659 (Tex.Cr.App.1958), as in the present case, the complainant escaped death and serious bodily injury in the course of robbery with a deadly weapon. Nevertheless, we held that a three and one-quarter inch blade knife, used to slash in the vicinity of the face and neck, unquestionably came within the definition of a deadly weapon. Where sufficient evidence exists to support a jury's verdict, this Court should not substitute its findings for those of the jury. *Ferrell v. State*, 464 S.W.2d 851 (Tex.Cr.App.1971). In this case, ample evidence came before the jury to show that the complainant suffered slash wounds to the face and neck. It is common knowledge that a four-inch knife blade used to slash at the throat is deadly, whether or not the weapon is utilized to its full lethal potential. In *Douglas v. State*, 89 Tex.Cr.R. 39, 229 S.W. 326 (1921), the defendant cut the injured party in front of the neck and also in the hip three times. The Court held there was sufficient evi-

dence to support a conviction for assault with intent to murder. In *Hunter v. State*, 161 Tex.Cr.R. 225, 275 S.W.2d 803 (1954), this Court again held that the wounds may be looked to to justify the inference that a deadly weapon was used.

How deep would the majority require that the victim's wounds go before finding that a knife is a deadly weapon? The statute defines a deadly weapon as anything by its use or intended use that is *capable* of causing death or serious bodily injury. It does not require that death must occur by the use of a weapon before it can be classified as deadly. In *Davis v. State*, 532 S.W.2d 626 (Tex.Cr.App.1976), and in *Washington v. State*, 518 S.W.2d 240 (Tex.Cr. App.1975), the convictions were for aggravated robbery under the present code. Knives were displayed by the defendants in the commission of the robberies. In each case the complaining witness suffered no injuries. This Court affirmed each conviction without requiring experts to testify as to the status of knives as deadly weapons. In light of the foregoing cases, it appears that when a knife is merely displayed in the course of a robbery, but not used to actually inflict injury, no expert testimony is required to establish it as a deadly weapon. The appellant used the knife to make the victim believe that it was a weapon capable of causing death or serious bodily injury to accomplish the robbery. This is what the Legislature intended—to punish for the use of such a weapon to accomplish robbery whether or not injuries were inflicted. Yet, by today's decision the majority holds that when a knife is actually used to slash the throat but the victim is fortunate enough to escape death or serious bodily injury deadliness may not be inferred by the use of the weapon and from the complainant's wounds but must be proven by the use of medical testimony.

In *Duhon v. State*, 136 Tex.Cr.R. 404, 125 S.W.2d 550 (1939), this Court held that where an automobile is used in a manner likely or calculated to produce death the instrument as well as the wounds inflicted may be looked to in determining the defendant's intent. The Court did not require

proof from an expert that the automobile could cause death. This Court should not overlook prior decisions and adopt such an unreasonable rule.

Under the opinion by the majority, it would follow that an irate two hundred-pound athlete while intending to kill could swing a heavy sword at another's neck while stating, "I am going to kill you, you s.o.b.," and this would be insufficient to constitute an assault with a deadly weapon if somehow the intended victim were not killed. This would ignore the definition in the present code that a weapon is deadly if by its intended use it is capable of inflicting death or serious bodily injury. That definition was ignored by the majority in the present case.

In *Boazman v. State*, 501 S.W.2d 894 (Tex.Cr.App.1973), the Court wrote:

" . . . Even though a pocket knife is not a deadly weapon per se, the mode and manner in which it is used along with the wounds inflicted on the injured party, are some of the factors used in determining whether the accused had specific intent to kill. See *Williams v. State*, 477 S.W.2d 24 (Tex.Cr.App.1972)."

In that case, Boazman urged that the Court adopt the reasoning in *Blount v. State*, 376 S.W.2d 844 (Tex.Cr.App.1964), concerning the seriousness of the wounds inflicted in establishing an attempt to kill. This Court stated:

" . . . Upon re-examination of that case, we conclude that the better rule is that expressed in the dissenting opinion, wherein Presiding Judge Woodley stated:

" '*If it was possible that death might have been inflicted by the weapon, and the defendant intended to take life, though the weapon was not a deadly weapon, still he might be guilty of an assault with intent to murder. . .* '" (Emphasis supplied)

The Court in *Boazman* held that there was sufficient evidence to determine that appellant had specific intent to kill and that the evidence was sufficient even though

there was no expert testimony that the knife used was a deadly weapon. The *Boazman* case has not been overruled. It should be followed. It is in line with the present statutes. Everyone knows that a four-inch bladed knife used to cut the throat of another is capable of producing death or serious bodily injury. It is a fact so well known that any court should take judicial notice of it. See *Gay v. State, supra,* and the statement by Judge Krueger. This writer knows of no rule that would require judges to wear blinders and disregard facts of such common knowledge. This is especially true in the face of the statute defining knives as instruments that are capable of inflicting serious bodily injury or death by cutting or stabbing.

To the extent that *Danzig v. State,* 546 S.W.2d 299 (Tex.Cr.App.1977), or any other case, is contrary, it should be overruled.

The question is simple. If a knife with a four-inch blade is capable of producing serious bodily injury or death, the majority is wrong according to the statute enacted by the Legislature.

The judgment should be affirmed.

VOLLERS and W. C. DAVIS, JJ., join in this dissent.