Larry Earl BANKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–81–0192–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 27, 1982.

Rehearing Denied July 22, 1982.

Discretionary Review Refused
Oct. 27, 1982.

Leonard M. Roth, Houston, for appellant.

Alvin M. Titus, Houston, for appellee.

## OPINION

EVANS, Chief Justice.

A jury convicted the appellant of the offense of aggravated robbery and assessed his punishment at forty years imprisonment.

The security manager at Joske's, a retail department store, testified that on October 30, 1979, he noticed the appellant taking boys' jeans off a clothing rack and bending down to the floor. Observing the appellant place a plastic covering over the clothing and start to exit from the store without paying for the jeans, the security manager motioned to a store detective, and both men followed the appellant into the store's parking lot and around the corner of a Roy Rogers food stand, at which point they were five or six feet away from the appellant. The security manager then confronted the appellant in front of a parked car, and the store detective went around to the rear of the automobile. Although the sequence of events at this point is a matter of contention, the record clearly reflects that upon being confronted by the security manager, the appellant threw the merchandise on the hood of the parked car, pulled an open knife, and began making slashing motions with it. He then turned and ran away, but he was overtaken by the security manager, who subdued him and gained possession of the knife.

The appellant was indicted under Tex. Penal Code Ann. § 29.02 (Vernon 1974), which provides:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this Code and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death....

Tex. Penal Code Ann. § 29.01 defines the term "in the course of committing theft" as meaning:

"conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.

In his first and second grounds of error, the appellant contends that the evidence is insufficient to prove two essential elements of the offense of robbery, to-wit: (1) that the event occurred in the course of committing theft, and (2) that the event placed the complaining witness in fear of imminent bodily injury or death.

Under his first ground of error, the appellant argues that the evidence shows that he had totally relinquished control of the property prior to the time that he exhibited the knife. Thus, it is his position that even if there was evidence of violent conduct "in immediate flight after the attempt or commission of theft," there was no showing that such violence occurred "in the course of committing theft ... *and with intent to obtain or maintain control of the property.*" (emphasis added)

The appellant argues that the testimony of the security manager shows that the appellant threw the clothes on the hood of the car when he was first confronted by the security manager, and that by his language, he indicated that he was relinquishing possession of the goods. The direct testimony of the security manager is subject to that interpretation. However, during cross-examination, the security manager testified that the appellant discarded the clothing after he was told to return to the store:

Q. All right. And that's when you say you were going to take him back or said something to the effect you were going to take him back into the store?

A. I asked him to come back with us.

Q. This is when he threw down the merchandise on the hood of the car?

A. On the hood.

Q. All right. You say at this time he refused to come with you, and he pulled out State's Exhibit No. 3, right, the knife?

A. Yes, sir, that's correct.

The jury could reasonably have inferred from the testimony of the security manager, as well as that of the store detective, that the appellant's action in pulling the knife occurred almost simultaneously with his throwing the merchandise on the hood of the car. Thus, the jury might have determined from the evidence that when the appellant was told to return to the store, he responded by throwing the clothing on the hood, saying "Take your shit, man," and, in the same motion, pulling the open knife from his back pocket and refusing to surrender himself.

Furthermore, as indicated by the commentary to § 29.02 of the Penal Code, violent conduct accompanying immediate flight after the attempt or commission of theft is equally as dangerous as violent conduct during the commission of the act. When a party, during immediate flight from the scene of a theft, places another in fear of immediate bodily injury or death in order to assure his escape, the violent conduct aggravates the act of theft, notwithstanding that control over the stolen property is relinquished in the process of escaping. The relinquishment of the property does not lessen the danger of the situation, since the motive is still escape.

The security manager testified, without objection, that the appellant's conduct placed him in fear of imminent bodily injury or death, and although objection was made and sustained to his subsequent testimony to similar effect, no motion was made to strike this testimony. Under the court's charge and the evidence in the record, the jury was justified in reaching a conclusion that the appellant placed the complaining witness in fear of imminent bodily injury or death during his immediate flight after the commission of theft. The first and second grounds of error are overruled.

In his third ground of error, the appellant contends that the evidence is insufficient to establish that the knife was a deadly weapon. In support of this ground of error, the appellant relies principally upon *Davidson v. State,* 602 S.W.2d 272 (Tex.Cr.App.1980), in which a store employee saw the defendant place some packages of camera film inside his pants and leave the store without paying for them. The employee and other employees followed the defendant into the parking lot, where the complaining witness tried to get the defendant to re-enter the store. The defendant then turned to the complaining witness, who was five or six feet distant from him, and with an open knife in his hand said "if you come any closer I'm going to cut you." The complaining witness pulled a box cutter from his pocket to defend himself, and the defendant walked backward a short distance, turned, and ran. There was testimony that the blade of the knife was approximately two and one-half to three inches long, but the knife was never found and was not in evidence. Although the employee testified that he had been in fear of bodily injury or death, he further admitted that this was because a friend of his had been hurt previously in a parking lot with a screwdriver-wielding assailant. The Court of Criminal Appeals held that the evidence was insufficient to show that the defendant used or intended to use the knife so as to inflict serious bodily harm or death, noting that the State had not established possible potential harm through hypothetical questions to a weapons expert. 602 S.W.2d 272 at 274.

In *Batro v. State,* 635 S.W.2d 156 (Tex. App. [1st Dist.], 1982), this court stated:

Since a knife is not a deadly weapon per se, *Harris v. State,* 562 S.W.2d 463, 466 (Tex.Cr.App.1978), the State must prove in each case that the particular knife involved is capable of inflicting deadly wounds. There are several factors which a court may consider in determining whether a particular knife is a deadly

weapon. They include: 1) injuries; 2) the manner in which the knife was used; 3) the length of the blade; 4) threats. *Alvarez v. State,* 566 S.W.2d 612 (Tex.Cr. App.1976); *Hart v. State,* 581 S.W.2d 675 (Tex.Cr.App.1979).

When, as in the instant case, serious bodily injury has not been shown, the court must discern the manner of the knife's use or its intended use, its size and shape, and its capacity to produce death or serious bodily injury in determining whether a knife was a deadly weapon. *Harris, supra.* We also note that the absence of injuries does not preclude a finding that a particular knife is a deadly weapon. *Denham v. State,* 574 S.W.2d 129 (Tex.Cr. App.1978).

In the case at bar, the security manager testified that when the appellant pulled the knife from his back pocket, the two men were standing "headlight to headlight" in front of the parked car. He testified that the appellant "just started slashing" and said "I'm not going anywhere." When the appellant pointed the knife at him, the security guard was placed in fear of imminent bodily injury or death. In addition to this testimony, a veteran police officer with six year's service testified that he had investigated homicides, cuttings and stabbings on many occasions, and that based upon his investigations, the knife in question was capable of inflicting serious bodily injury or death.

■ Expert testimony is no longer required to establish the character of a particular knife as a deadly weapon, but it may provide additional evidence on that element of the proof. *Batro, supra.* In the instant case, the jury was entitled to infer from the evidence that the particular knife in question, used by the appellant in the manner shown by the complaining witness's testimony, was capable of inflicting serious bodily injury or death. Thus, the evidence was sufficient to establish that the knife was a deadly weapon, and the third ground of error is overruled.

In his fourth ground of error, the appellant contends that the record reflects fundamental error because the court's charge is at variance with the indictment.

Section 29.02 of the Penal Code states in part that:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

\* \* \* \* \* \*

(2) intentionally or knowingly threatens *or* places another in fear of imminent bodily injury or death.... (emphasis added)

■ The indictment contained allegations in the conjunctive "threaten *and* place," and the court's charge alleged in the disjunctive "threaten *or* place." The appellant contends that the use of the word "or" lessened the State's burden of proof from that alleged in the indictment, citing *Williams v. State,* 612 S.W.2d 934 (Tex.Cr.App. 1981).

In *Robinson v. State,* 596 S.W.2d 130 (Tex.Cr.App.1980), the court found no fundamental error where the indictment contained allegations in the conjunctive and the court's charge alleged in the disjunctive. This ground of error is also overruled.

The trial court's judgment is affirmed.

DOYLE and STILLEY, JJ., also participating.

DOYLE, J., dissents.

DOYLE, Justice, dissenting.

The majority opinion states that it is not entirely clear from the testimony whether the merchandise was thrown on the hood of the car before or after the appellant was told to return to the store at the meeting in the parking lot when Mr. Fein, the Joske's security manager, and Mr. Price, the store's detective, confronted the appellant at the Chevrolet car. For this reason, I deem it important to set forth all of the testimony of the witnesses touching upon this event. Mr. Fein testified as follows on direct examination:

Q. Now, when you reached this point, how far were you in back of Mr. Banks, the defendant?

A. Maybe five feet—six feet.

Q. And you have a car parked here. (Indicating)

A. Yes, sir.

Q. Was there a car there? (Indicating)

A. Yes, sir, there was a car parked there.

Q. Was there anyone in the car?

A. No, sir, there was not.

Q. At the time this defendant reached this car, what, if anything, did he do?

A. Took the merchandise off of his shoulder, threw it on the car and said, "Take your shit, man."

Q. He threw it on the hood of the car?

A. Yes, sir.

Q. And he said what again?

A. "Take your shit, man."

Q. And did he turn around and face you?

A. Yes, sir, he did.

Q. How far away from him were you?

A. I was at the left front of the car.

Q. That's going to be right here? (Indicating)

A. Yes, sir, that's correct.

Q. Mr. Banks was at the right front of the car? That's going to be over here? (Indicating)

A. Yes, sir.

Q. So the distance between the two of you was a matter of what, four of five feet?

A. Headlight to headlight, yes, sir.

Q. Was anyone else around at the time?

A. Mr. Price circled around me, went to the right rear of the car.

Q. That would be here? (Indicating)

A. Right here, sir, the other end.

Q. Right here? Okay, thank you.

A. Yes, sir.

Q. Now, at the time that he is here, he's already thrown the clothes on the hood of the car, is that correct?

A. Yes, sir, that's correct.

Q. What, if anything, did he do at the time he's at this position?

A. I had my badge in my hand. I said, "You come back with us into the store.

Q. Let me stop you right there. You have the badge with you right now?

A. Yes, sir, I do.

Q. Can you show the jury that, please?

A. Yes, sir.

Q. How did you demonstrate that to the defendant?

A. I just had it in my hand. I said, "Come on back to the store with us."

Q. Were you armed in any way?

A. No, sir, I was not.

Q. After you displayed your identification there, what did you—what did the defendant do?

A. He said, "I ain't going nowhere, man."

Q. Then what happened?

A. He went down to his right and pulled out a knife. (Indicating)

Q. Did you see him reach in his pocket or behind him?

A. I just saw him go behind him. I assumed the right front pocket or right rear pocket, whatever.

Q. And he pulled out a knife?

A. Yes, sir, that's correct.

On cross examination Mr. Fein further testified:

Q. Now, when you say you got to the automobile, you said the defendant was— well, when you first came up to the automobile is when he threw down the clothes and just told you to keep them?

A. Yes, sir.

Q. All right. And that's when you say you were going to take him back or said something to the effect you were going to take him back into the store?

A. I asked him to come back with us.

Q. This is when he threw down the merchandise on the hood of the car?

A. On the hood.

Q. All right. You say at this time he refused to come with you, and he pulled out State's Exhibit No. 3, right, the knife?

A. Yes, sir, that's correct.

Q. How close to him were you then?

A. I was still on the left front of the car and he was at the right front of the car.

Q. So you were approximately the width of the car, if it's four or five, six feet wide, right?

A. Yes, sir.

Q. That's as close as you ever came to the man at that time, right?

A. That's correct.

Mr. Price testified on direct examination as follows:

At the time they're walking out—now, I'm referring to Mr. Banks and Mr. Fein—did Mr. Banks ever look over his shoulder at Mr. Fein?

A. Yes, he was many times looking over his shoulder.

Q. He looked over his shoulder and observed him?

A. Yes.

Q. Did they proceed on to Roy Rogers then?

A. Yes, they did.

Q. Did they stop at any particular point?

A. Yes, sir, they stopped at the front end of a blue Chevrolet, which was parked in the Shell parking lot.

Q. At the time they stopped, were did you go?

A. Probably around the Roy Rogers area somewhere, had already passed up Mr. Fein and Mr. Banks, was walking very quickly to get on the other side of both of them.

Q. So you went on the other side of the car then?

A. Yes, sir, I was on the other end of the car.

Q. All the way on the other end of the car, the rear?

A. Yes.

Q. Did you observe anything happen when they stopped in front of the car?

A. Yes, I saw Mr. Banks take these jeans, which had the bag pulled over them, this bag pulled over them, and threw it on the hood of this blue Chevrolet.

Q. Did you hear him saying anything at that time?

A. Yes, he said, "Take your shit, man."

Q. What happened?

A. Mr. Fein said, "I'm with Joske's security; could you come back in the store with us?"

Q. Let me stop your right there, Mr. Price. Did Mr. Fein show any identification to the defendant?

A. Yes, he did, a badge.

Q. Showed him a badge? Did you see him show him the badge?

A. Yes, it's a gold badge.

Q. Did you have your—did you show him a badge? Did you have your identification out?

A. I don't believe I had my identification out.

Q. After the defendant threw the jeans and bag down and said, "You can have your shit, man", what happened then?

A. Mr. Banks said, "No, man, I'm not going anywhere." He reached into his back pocket and pulled out a knife.

While the foregoing testimony is entirely clear to me that the events leading up the confrontation at the Chevrolet car occurred in the sequence outlined in appellant's brief, i.e., that the appellant threw the merchandise on the hood prior to any request from Mr. Fein to return to the store and before any knife was pulled, it is interesting to note how the State, in its brief, observed the sequence of events. I quote the relevant portions from the State's brief:

Fein saw Appellant secretly gather numerous pairs of blue jeans and exit the store without paying for them; he followed Appellant out on the store's parking lot. When Appellant became aware that he was being closely followed, he "[t]ook the merchandise off of his shoulder, threw it on the [hood of a] car and said, 'Take your shit, man'". Appellant then turned and faced Fein who was about five feet away.

Fein then displayed his badge and stated to Appellant, "You come back here with us into the store." Appellant responded, "I ain't going no where, man" and imme-

diately "went down to his right and pulled out a knife".

The State predicated its prosecution on the factual sequence outlined. With this acquiescence by the State, the evidence thus becomes undisputed that the appellant had already relinquished all control of the property before the knife was drawn. Section 29.02, Tex. Penal Code requires that a person not only be "in the course of committing theft," before an offense is committed, but there must also be the "intent to obtain or maintain control of the property." The jury was not at liberty to find from the evidence adduced that the appellant committed aggravated robbery, since it had no evidence before it that the appellant, in the course of committing the theft, also had the intent to maintain control of the property.

The State contends that the evidence reflected sufficient "nexus" between the violence and the antecedent theft to constitute aggravated robbery and cites *Davis v. State,* 532 S.W.2d 626 (Tex.Cr.App.1976) as authority for its conclusion. The averment in its brief that "by swinging the knife at Fein, Appellant did manage to escape", is wholly without verification in the record. The testimony shows that the appellant made "slashing" motions with the knife while some five to six feet from Mr. Fein. In fact, the nearest act of violence in the entire episode occurred when Mr. Fein caught up with the appellant and tackled him. In *Davis,* which is wholly distinguishable on its facts from the case before us, the complainant stated that the man to whom he had given a ride pointed a knife into his ribs and ordered him to keep driving and "keep cool man and you won't get hurt". Fearing that his life was in danger, he jumped from the car and ran to call the police. The appellant therein was charged with, and convicted of aggravated robbery for theft of the complainant's car. The court found that there was sufficient nexus between the violence of being held at knifepoint while driving and the subsequent parting with the complainant's car to constitute aggravated robbery. In *Davis* and in *Lightner v. State,* 535 S.W.2d 176 (Tex. Cr.App.1976), the thefts were ongoing when the violence occurred, and in each case the appellants were trying to obtain or maintain control of stolen property at the time the violence was committed. In the case before us, the theft was over, the stolen goods had been surrendered, and the knife-pulling grew out of an entirely new episode, i.e., an attempt by Mr. Fein to get the appellant to return to the store.

In our case, the State correctly tracked Sections 29.01(1) and 29.02(a) in the indictment and the charge to the jury. Thereafter, it was incumbent upon the State not only to prove that the appellant was acting "in the course of committing theft" but that he also had the intent to obtain or maintain control of the property. For the conviction of aggravated robbery to be sustained, both elements must be proved. *Johnson v. State,* 541 S.W.2d 185 (Tex.Cr. App.1976); *Earl v. State,* 514 S.W.2d 273 (Tex.Cr.App.1974).

I would sustain appellant's first point of error.

I have no dispute with the well established principle of law which holds that a knife is not a deadly weapon per se, but may qualify as such by showing that from the manner of its use or intended use, it was capable of causing death or serious bodily injury. I would even concede that the knife involved in the case before us was capable of qualifying as a deadly weapon. This was only a part of the State's burden. Since in the instant case there was no bodily injury, it became the State's obligation to show that the appellant *used* or *intended to use* the knife in such a manner that Mr. Fein would have received serious bodily injury or death. (Emphasis mine) *Harris v. State,* 562 S.W.2d 463 (Tex.Cr.App.1978). In this regard, the evidence shows that the appellant took off running in the opposite direction from Mr. Fein. There was never a spoken threat. By Mr. Fein's testimony, he was never closer than five or six feet to the appellant until he chased, overtook and tackled him some distance from the scene where the knife was originally pulled.

The Court of Criminal Appeals, in a case with similar facts, held that the evidence was insufficient to show that the knife was used in a deadly manner. *Davidson v. State,* 602 S.W.2d 272 (Tex.Cr.App.1980). In *Davidson,* a store employee saw appellant take merchandise out of the store without paying for it. This employee, with two other employees, followed the appellant into the parking lot. Appellant turned on the employee with an open knife in this hand and said "if you come any closer I'm going to cut you." The employee, who was five to six feet away from the appellant, did not move any closer. The employee also armed himself with a cardboard box cutter. Appellant walked back a short distance, turned and ran. The employee chased appellant for a mile or so. Appellant, who was discovered, exhausted and leaning against a shed, was taken into police custody. The knife was not recovered. The blade of the knife was estimated by three of the employees who witnessed the incident to be between three and five inches long. The employee who was threatened stated that he was placed in fear of imminent bodily injury or death. No wounds were inflicted.

The Court, in reversing the conviction in *Davidson,* stated:

> A knife is not a deadly weapon per se. *Williams v. State,* 575 S.W.2d 30 (Tex.Cr.App.1979); *Limuel v. State,* 568 S.W.2d 309 (Tex.Cr.App.1978). It can qualify as a deadly weapon by showing the manner of its use, its size and shape, and its capacity to produce death or serious bodily injury. *Denham v. State,* 574 S.W.2d 129 (Tex.Cr.App.1978); *McElroy v. State,* 528 S.W.2d 831 (Tex.Cr.App.1975).
>
> \*   \*   \*   \*   \*   \*
>
> Even though there was proof of the knife's size, we find as in *Alvarez,* that the evidence in the present case is insufficient to show that the defendant used or intended to use the knife so as to inflict serious bodily harm or death. See *Harris v. State,* 562 S.W.2d 463 (Tex.Cr.App.1978), and cases there discussed. *Cf. Dominique v. State,* 598 S.W.2d 285 (Tex.Cr.App.1980). The evidence is therefore insufficient to show that the appellant used or exhibited a "deadly weapon," thereby committing aggravated robbery as alleged in the indictment.

The Court of Criminal Appeals in the following cases, looking at the manner of the use and intended use of the weapons involved, refused to find them deadly. In *Alvarez v. State,* 566 S.W.2d 612 (Tex.Cr.App.1978), the appellant was ordered by a police officer to drop a linoleum hook-blade knife. Instead, the appellant, brandishing the knife, advanced on the retreating officer who had pulled his gun. When appellant got within three or four feet, he swung at the officer with the open knife. The officer shot the appellant in the leg, but he kept advancing on the officer until the officer threatened to kill him. It was held that the weapon, based on its use or intended use, was not a deadly weapon. The same result was reached in *Danzig v. State,* 546 S.W.2d 299 (Tex.Cr.App.1977), notwithstanding that the appellant and her companion actually cut the complainant on the arms and face, requiring eight stitches to close the wounds. These two cases are typical of the numerous ones where the Court has been confronted with evidence of actual use or intended use of a weapon. In *Danzig,* Judge Roberts, after citing several other cases, succinctly states the emerging rationale of the Court:

> What these cases stand for is the basic rule that the State must prove every element of its case beyond a reasonable doubt, and that where the deadly nature of the weapon is an issue the jury will not be allowed to infer deadliness solely from superficial wounds, even though those wounds may have required suturing; thus, the State must provide the trier of fact with some evidence, normally through expert testimony, that the weapon was used or intended to be used in such a way that it was "capable of causing death or serious bodily injury." V.T.C.A., Penal Code, Sec. 1.07(a)(11)(B). See also *Boazman v. State, supra,* 501 S.W.2d [894] at 896.

I find no testimony, expert nor lay, in the instant case which shows that the knife was used or intended to be used by the appellant in such a way that it was capable of causing death or serious bodily injury. On the contrary, the appellant's actions were entirely directed at avoiding contact with Mr. Fein or Mr. Price. Indeed, I think the only logical deduction that can be drawn from the appellant's action in pulling the knife was that if Mr. Fein were to attempt to physically force or carry him back to the store, he would use the knife to prevent such act. This falls far short of threatening or placing Mr. Fein in fear of bodily injury or death, as required by Sec. 29.02(a)(2) of the Texas Penal Code. Even if I could find an implied threat from the appellant's conduct herein, it would be a threat of future harm, not imminent harm. This would not support a finding of aggravated circumstances. *Rucker v. State,* 599 S.W.2d 581, 583 (Tex. Cr.App.1979); *Rogers v. State,* 575 S.W.2d 555 (Tex.Cr.App.1979).

Based on the authorities cited, especially *Danzig, Alvarez,* and *Davidson,* the evidence is much stronger in the case before us that the State wholly failed to prove the essential elements of aggravated robbery.

I would also sustain appellant's points of error two and three and order the judgment of the trial court reversed and the case remanded.