**Susan PARRISH, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. B14–81–635CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 18, 1982.

Mike DeGuerin, Houston, for appellant.

Roberto Gutierrez, Jack Frels, Houston, for appellee.

Before MILLER, MORSE and JAMES, JJ.

MILLER, Justice.

This is an appeal from a conviction for aggravated assault. The appellant, Susan Parrish, was indicted for attempted murder and aggravated assault. Appellant waived her right to a jury trial. After a bench trial, the court acquitted the appellant of the attempted murder charge, and found her guilty of aggravated assault. Punishment was assessed at three years probation. Appellant's only contention is that the evidence is insufficient to sustain a verdict of guilty to the offense of aggravated assault with a deadly weapon. We find no error in the judgment of the trial court and affirm.

The record reflects that the complainant, William H. Forney, and the appellant were divorced on November 10, 1978. Included in the decree of divorce was a permanent injunction enjoining the appellant from, among other things: "communicating with" the complainant; "going about" the complainant; "going about the residence or place of employment of" the complainant; "doing any act calculated to embarrass, harass, molest, injure or humiliate" the complainant; and "hurting, harming, assaulting or in any manner causing physical injury" to the complainant. The complaining witness, Forney, testified that the appellant had violated the injunction "many, many times" and had even threatened his life at least twelve or fifteen times.

The gist of the facts, which are somewhat voluminous, is as follows: The complaining witness was at home in his driveway on April 21, 1980, packing his car in preparation to leave town for the weekend. While in his driveway he observed the appellant driving by in a 1979 black Cadillac. The appellant came to a screeching halt, backed up, and then pointed her finger at the complainant, after which he went into his house. The appellant left the scene and the complainant began packing his car again. While he was standing next to the Mustang parked in his driveway, the appellant reappeared. The complainant testified that the appellant pulled into the driveway " . . . screeched her tires back and then gunned the car in the driveway. Before hitting me at this position she turned the wheel into me where I was pinned between the two cars like putting a pencil between your hands and I fell out in approximately that position there." The complainant then "crawled and hobbled" into the house. He

was taken to the hospital where he spent six days recovering from his injuries which he described for the trial judge:

> Q. [Prosecutor] Would you please relate to the judge what type of injuries you sustained?
>
> A. Yes, sir. I received lacerations from approximately an inch below my hips and lacerations on my knees and down the shins and on both ankles. On the left leg I had a broken kneecap and approximately seven inches of flesh and skin gone off of my shin on the left side and my left ankle and foot was explained to me as being a jammed ankle. There was one place on that ankle that the bone was visible and there was approximately —let's see—I had a hemotoma in my left ankle and one behind my left knee and right knee and one on my left forearm and I had also hit something on the Mustang car and I had a hemotoma here.

The complainant further testified that he received a phone call from the appellant while he was in the hospital and that "she made the statement to me that we were playing for keeps this time. And I hung up."

Officer I.E. Jordan, a Houston police officer, was called as an expert witness by the State. It was his testimony that the damage to the appellant's left side of her automobile and the right side of the Mustang was consistent with the complainant's testimony that he was "pinned between the two cars like putting a pencil between your hands." Officer Jordan testified that the damage on the Mustang was caused by a person's body being slammed up against the vehicle itself. When asked hcw he reached this conclusion he explained that:

> In the paint smears there are fine imprints of clothing marks. When clothing is hit on the vehicle itself the imprints of your clothing is (sic) left on the paint mark. In this area the imprints of the clothing were on it.

It was the appellant's testimony that the collision was an accident and that it did not occur in the complainant's driveway but on a public street.

Appellant's sole contention is that the evidence is insufficient to prove the automobile was a deadly weapon under Tex.Penal Code Ann. § 1.07(a)(11) (A) & (B) (Vernon 1974) which states:

> (11) "Deadly weapon" means:
>
> (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
>
> (B) anything that in *the manner of its use or intended use* is capable of causing death or serious bodily injury (emphasis added).

In the instant case, the instrument used was not a deadly weapon per se. We must therefore look to "the manner of its use or intended use" in determining whether the automobile herein was a deadly weapon. *See Hubbard v. State,* 579 S.W.2d 930 (Tex. Cr.App.1979). Appellant's contention is without merit and strains the bounds of reason; it is well known that an automobile is capable of producing death or serious bodily injury.

It is the appellant's position that the collision was an accident. Without question, it is well settled that when sufficiency of the evidence is challenged this court is obliged to review the evidence in the light most favorable to the decision in the trial court. *Ellett v. State,* 607 S.W.2d 545 (Tex. Cr.App.1980). In viewing the evidence before us, we do not feel that this position is plausible. In *Duhon v. State,* 136 Tex.Cr.R. 404, 125 S.W.2d 550 (Tex.Cr.App.1939), the appellant was convicted of assault with intent to murder for running over a person with his automobile. It was appellant's position in *Duhon, supra,* on his motion for rehearing that there was no evidence to show that he had entertained the specific intent to kill the prosecutrix. The court addressed this contention and stated that:

> The intent rests exclusively within the mind of the person committing the offense, the existence of which is inferred from acts committed or words spoken.

The law presumes that a person intends that which is the natural or probable consequences of his act. If a person is driving an automobile in such manner as to show a reckless disregard for the life of another, and in so doing runs upon or over the person who happens to be in the course of his travel, it shows an evil disposition from which inference would arise that he intended the natural or probable consequences of his act. An automobile may not be a deadly weapon per se; yet if from the manner of its use it is likely or calculated to produce death, the presumption obtains that death was intended.

The statute, as above set out, does not require that death must occur by the use of a weapon or instrument before it can be classified as deadly. A weapon or instrument is deadly if by its use or intended use it is capable of inflicting death or serious bodily injury. Further, it has been held that the wounds inflicted on the injured are also a factor which is considered in determining the character of the weapon. *Williams v. State*, 477 S.W.2d 24 (Tex.Cr.App. 1972). The record reflects the complainant received a broken kneecap, a jammed ankle, and lacerations, among other things, and was hospitalized for six days. Thus, the manner in which the automobile was used and the injuries sustained by the complainant were sufficient to bring the automobile within the definition of a deadly weapon.

Appellant attacks the sufficiency of the expert testimony given by Officer Jordan and the fact that there was no testimony given by a doctor. It is well settled that expert witness testimony is not required before a weapon can be declared a deadly weapon, nor need wounds be inflicted before the weapon is declared a deadly weapon. *Denham v. State*, 574 S.W.2d 129 (Tex.Cr.App.1978). *See Rodriguez v. State*, 645 S.W.2d 273 (Tex.Cr.App., 1982). Previous cases like *Harris v. State*, 562 S.W.2d 463 (Tex.Cr.App.1978), and *Danzig v. State*, 546 S.W.2d 299 (Tex.Cr.App.1977), relied upon by appellant, were reversed in *Denham, supra,* insofar as they require such expert testimony. The court in *Denham* further noted that:

In this State, the opinions of lay witnesses, when competent, are admissible concerning sanity, insanity, value, handwriting, intoxication, physical condition—health and disease, estimates of age, size, weight, quantity, time, distance, speed, identity of persons and things.

No further expert testimony was necessary to justify the trial judge in finding that an automobile as used by the appellant was a deadly weapon.

We find that the evidence regarding "the manner of its use or intended use" is sufficient to show that the automobile was capable of causing death or serious bodily injury, and overrule appellant's contention to the contrary. We therefore hold that the evidence was sufficient to sustain a conviction for aggravated assault.

The judgment is affirmed.