NUMBER 13-99-557-CR

 COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________ 


RAUL HERNANDEZ VILLARREAL , Appellant, 



v.

 

THE STATE OF TEXAS , Appellee. 

___________________________________________________________________ 


On appeal from the 156th District Court

of Bee County, Texas.

 __________________________________________________________________ 



O P I N I O N

 

Before Chief Justice Seerden and Justices Dorsey and Yañez 

Opinion by Justice Dorsey

 

Appellant, Raul Hernandez Villarreal, was indicted for the offense of aggravated assault by threatening imminent bodily
injury by use or exhibition of a deadly weapon (a motor vehicle). The indictment alleged two prior felony convictions for
enhancement purposes. The jury found appellant guilty "as alleged in the indictment." Implied in the verdict is a finding
that the vehicle used by appellant is a deadly weapon.(1) The jury also found the enhancement allegations true and assessed
punishment at five years in prison. By a sole point of error appellant asserts that the evidence is insufficient to support his
conviction because there is no evidence to show that he used or exhibited a deadly weapon during commission of the
offense. We affirm. 

Facts

 In the early afternoon of December 6, 1998, Louisa Villarreal drove to the home of Irene Osuna in Beeville, Texas to drop
off a videotape. Louisa worked for Irene at Covington Credit, and Irene had known Louisa's husband, the appellant in this
case, for about twenty years. While Irene and Louisa were talking in front of Irene's house appellant arrived in a black truck
and started to park behind Louisa's truck. As soon as appellant came to a stop Louisa drove away. Appellant drove off
right behind her and hit the rear end of Louisa's truck with his truck. The collision occurred in front of Irene's house. Irene
testified that when Louisa "took off and he [appellant] took off right behind her, he accelerated and just right off the bat hit
her." When the State's attorney asked Irene how hard appellant had hit Louisa she replied, "It was hard." Irene also stated
that the collision could have been an accident. After the collision appellant and Louisa headed towards nearby Archer
Street. 

James Wolfe was in the front yard of a house on Randall Street in Beeville when he heard the loud noise of engines revving
and vehicles crashing together. He focused his attention toward Archer Street, which intersected Randall Street. He saw
appellant's and Louisa's trucks northbound on Archer Street going over thirty miles per hour. Wolfe testified that Louisa's
truck was struck approximately three different times. He did not see the first collision. However he did see appellant's
truck ram the rear end of Louisa's truck two times as the trucks drove down Archer Street. After the third impact both
vehicles stopped on Archer Street. Louisa got out of her vehicle and ran towards Wolfe. When the State's attorney asked
Wolfe if appellant had hit Louisa's vehicle on purpose he replied affirmatively. The State's attorney then asked him, "And
what made you think that?" He responded, "Because when the first collision happened and the second one, it [appellant's
truck] came right back up on it [Louisa's truck] and hit it, and then again down the road it hit it again. Then it backed up
and went around to the side." Wolfe did not see anything to indicate that Louisa's vehicle caused the collisions. He did not
see her slam on her brakes, and he did not see her brake lights go on. 

A third witness, Patricia Barrett, was driving on Randall Street coming to a stop at the intersection of Archer Street. As she
looked to her left to check the oncoming traffic at the intersection she heard a collision. She did not actually see the
collision, but she turned to her right and saw the two trucks driven by appellant and Louisa. Barrett saw that the trucks had
already collided. She watched appellant back up, turn around, and go down Archer Street. She followed his truck and got
its license number. 

Robert Rangel, a Beeville police officer, was dispatched to the scene of the collision. When he arrived at the scene he
found Louisa sitting on the grass. Rangel testified that she was crying and "very hysterical." 

Louisa and appellant did not testify during the trial. 

Analysis

By his sole point of error appellant asserts that the evidence is insufficient to support his conviction because there is no
evidence to show that he used or exhibited a deadly weapon during commission of the offense. The United States Supreme
Court set the standard for reviewing legal sufficiency of the evidence in Jackson v. Virginia, 443 U.S. 307
(1979);Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). In reviewing a legal sufficiency question we must
view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319; Moseley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998);Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989) (reaffirming
Jackson standard of review). This Court must evaluate all of the evidence, both direct and circumstantial, whether
admissible or inadmissible. Dewberry, 4 S.W.3d at 740. See Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998). When reviewing the evidence our role is not to become a thirteenth juror. We may not re-evaluate the weight and
credibility of the record evidence and thereby substitute our judgment for that of the fact-finder. Dewberry, 4 S.W.3d at
740. Whether the evidence fails to exclude every outstanding reasonable hypothesis other than guilt is not a measure of the
legal sufficiency of the evidence. Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991) (rejecting the reasonable
hypothesis construct as a measure of legal sufficiency). 

The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. Mosley,983
S.W.2d at 254; Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Reconciliation of conflicts in the evidence is
also within the exclusive province of the jury. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 

 In the instant case the application paragraph of the charge provided: 

Now, if you find from the evidence beyond a reasonable doubt, that on or about the 6th day of December, 1998, in Bee
County, Texas, the Defendant, Raul Hernandez Villarreal, did then and there intentionally or knowingly threaten Louisa
Delgado Villarreal with imminent bodily injury by ramming Louisa Delgado Villarreal's motor vehicle with a vehicle and
did then and there use or exhibit a deadly weapon, to-wit: a motor vehicle, that in the manner of its use or intended use is
capable of causing death or serious bodily injury, during the commission of said assault, as alleged in the indictment, then
you will find the defendant guilty as charged. 

The charge defined "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death
or serious bodily injury." This definition mirrors the definition provided in section 1.07 of the penal code. See Tex. Penal
Code Ann. § 1.07(a)(17)(B) (Vernon 1994). 

Appellant asserts that there is "no evidence" to support the allegation that he used or exhibited a deadly weapon. He argues
that the evidence in this case merely indicates that his vehicle struck the victim's vehicle as many as four times and that
some or all of those collisions may have been accidental. 

A motor vehicle in the manner of its use or intended use is clearly capable of causing death or serious bodily injury and
therefore can be a deadly weapon. Ex parte McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992); Parrish v. State, 647
S.W.2d 8, 10 (Tex. App.--Houston [14th Dist.] 1982, no pet.). However an automobile is not a deadly weapon per se.
Medina v. State, 962 S.W.2d 83, 88 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd); Morgan v. State, 775 S.W.2d 403,
406 (Tex. App.--Houston [14th Dist.] 1989, no pet.). We must therefore look to "the manner of its use or intended use" in
determining whether the automobile herein was a deadly weapon. Parrish, 647 S.W.2d at 10. See Hubbard v. State, 579
S.W.2d 930, 931 (Tex. Crim. App. 1979). The State is not required to show injury to the complainant or provide expert
testimony in order to meet its burden that the instrument in question qualified as a deadly weapon. Morgan, 775 S.W.2d at
406; Denham v. State, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978); Parrish, 647 S.W.2d at 11. In Walker v. State, 897
S.W.2d 812 (Tex. Crim. App. 1995) the court held that "no intent to use the automobile as a weapon need be shown."
Walker, 897 S.W.2d at 814. 

In the instant case Irene Osuna testified that the collision that she had seen in front of her house could have been accidental.
However her testimony also showed that appellant had accelerated before hitting the rear end of Louisa's truck. She
testified that when Louisa "took off and he [appellant] took off right behind her, he accelerated and just right off the bat hit
her." This was a "hard" hit according to Irene. Thus the State presented evidence showing that appellant accelerated his
vehicle knowing that Louisa's vehicle was in front of him. This evidence militates towards an intentional hit rather than an
accidental one. Further James Wolfe saw appellant's truck hit the rear end of Louisa's truck two times. His testimony was
that appellant had hit Louisa's truck on purpose. Wolfe did not see anything to indicate that Louisa's vehicle caused the
collisions. The jury was within its authority to conclude that appellant did not accidentally ram the rear end of Louisa's
vehicle. 

Wolfe's testimony also showed that appellant was pursuing Louisa's vehicle at over thirty miles per hour during the time
when appellant rear ended her vehicle. Appellant's pursuit of Louisa's vehicle and his repeated acts of ramming the rear
end of her vehicle could certainly have caused her to lose control of the vehicle and suffer serious bodily injury or death.
We conclude that the evidence regarding "the manner of its use or intended use" is sufficient to show that appellant's
vehicle as used in this manner was capable of causing death or serious bodily injury to Louisa. This was sufficient
evidence from which a rational trier of fact could have found beyond a reasonable doubt that appellant used his vehicle so
that it was capable of causing death or serious bodily injury. We therefore hold that the evidence is sufficient to show that
appellant used or exhibited a deadly weapon during the commission of the assault. The trial court did not err in entering an
affirmative finding that a deadly weapon was used. We overrule the point of error. 

We AFFIRM the judgment of the trial court. 



______________________________ 

J. BONNER DORSEY, 

Justice 



Do not publish . 

Tex. R. App. P. 47.3(b). 



Opinion delivered and filed 

this 1st day of June, 2000. 

1. The trial court may properly enter an affirmative finding of the use of a deadly weapon when the indictment alleges the
use of a deadly weapon, and the jury's verdict reads "guilty as charged in the indictment." Polk v. State, 693 S.W.2d 391,
394 (Tex. Crim. App. 1985). The indictment here specifically alleged the use or exhibition of a "deadly weapon;" the jury's
verdict reads "guilty of the offense of Aggravated Assault-Threaten Imminent Bodily Injury as alleged in the Indictment."
The judgment shows the affirmative finding on use of a deadly weapon.