Nolberto ORTEGA, Jr. aka Albert
Ortega, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 07–89–0239–CR.

Court of Appeals of Texas,
Amarillo.

May 8, 1990.

**146**

W. Craig Barlow, Dallas, for appellant.

Randall Sherrod, Criminal Dist. Atty., Canyon, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Nolberto Ortega brings this appeal from his conviction of unlawful possession of a firearm by a felon. The punishment, enhanced by virtue of two prior felony convictions, was assessed by the trial court at fifty years confinement in the Department of Corrections. We affirm the conviction.

In attacking his conviction, appellant raises three points of error. In those points he contends the trial court erred in: (1) finding that he used and exhibited a deadly weapon during the commission of the offense; (2) admitting into evidence an exhibit as well as testimony concerning a transaction that occurred prior to the occurrence in question; and (3) overruling his objection to a portion of the court's charge in which the jury was charged that aggra-vated assault is an act of violence or threatened violence to person or property.

The nature of appellant's challenge requires a brief review of the relevant evidence. On March 28, 1989, at 10:20 p.m., Amarillo Police Officer Darryl Glenn Moore was dispatched to 4604 S. Hughes on what he denominated as a "shots fired" call. Upon arrival, although he did not find anyone with a gun, he did find a spent .22 caliber shell casing on the front porch of the residence located at that address.

At approximately 11:25 p.m. on the same evening, Officer Dennis Rhyne was dispatched to the same address as a back-up officer, again on a "shots fired" report. As he was approaching the address, he observed an Hispanic male, who was subsequently determined to be appellant, walking on Hughes street a short distance from the address. After he arrived at the scene, Rhyne was requested by the primary officer to "check" that individual. Returning to the area where he had seen appellant, the officer saw appellant walking toward a lounge and stopped him on the sidewalk immediately next to the lounge.

The officer obtained identification showing appellant's residence to be 4604 Hughes. At that time, the officer informed appellant that he needed appellant to go back to the house with him so he, the officer, could "find out what was going on." He also advised appellant that before he put him in the patrol car he was going to "pat" him down to make sure appellant was not carrying any weapons. Upon doing so, the officer found the .22 caliber pistol giving rise to this prosecution.

The defense produced John Blankenship, an investigator for the Brazoria County District Attorney's office. Blankenship testified that appellant had aided his office in the investigation of a murder committed by a gang known as the "Texas Syndicate" at a time when appellant was an inmate in the Texas Department of Corrections. As a result of that aid, the investigator said, appellant would be justified by any legal means in seeking to protect himself from retaliation.

Appellant also produced the testimony of Renee Ashley to the general tenor that appellant was afraid that someone would take his life as a result of his aid to the authorities. His last witness, Diane Champeau, his sister, testified that appellant "was uneasy in not having any protection" from those who might want to kill him.

■ Texas Code of Criminal Procedure article 42.18, § 8(b) provides that if a defendant is serving a sentence in a case such as this, and the judgment contains an affirmative finding that such defendant used or exhibited a deadly weapon in the commission of the offense or during immediate flight therefrom, that defendant's eligibility for parole is considerably circumscribed. The trial court entered such an affirmative finding in the judgment in this case.

The thrust of appellant's argument under his first point is that the trial court erred in making that finding. The rationale of that argument is that the intent of the statute is that the use or exhibition of the weapon must be in connection with the commission of an offense other than the mere possession of the weapon, *i.e.*, there must be another associated felony. We disagree.

In *Patterson v. State*, 769 S.W.2d 938 (Tex.Crim.App.1989), the Court had occasion to explicate the meaning of the phrase "used or exhibited a deadly weapon" as used in the statute. In the course of its discussion, the Court concluded that to "exhibit" a deadly weapon, within the purview of the statute, means that the weapon was consciously shown or displayed during the commission of the offense. That, of course, is not the case here.

■ However, the court went on to approve an interpretation by the Court of Appeals that the term "used" during the commission of a felony offense refers not only to the wielding of a firearm with effect, "but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony."

Since the sine qua non of the offense charged here is the possession of a firearm, that possession not only facilitates, but also constitutes, the felony. That being the case, the firearm was "used" in the commission of a felony within the purview of the statute.

Our conclusion that this is the case is not unique. In *Alston v. State*, 722 S.W.2d 24 (Tex.App.—Fort Worth 1986, pet. ref'd.), the court was presented with a similar contention. With the observation that the legislature intended to inhibit individuals who had been previously convicted of felony grade crimes from having dangerous weapons in their possession, the *Alston* Court concluded that a felon's offense commenced when he carried a firearm away from his home. That being so, the court concluded the weapon must have been "used" in the commission of the felony. *Id.* at 26. Appellant's first point is overruled.

■ The evidence challenged in appellant's second point is the testimony of Officer Moore and the .22 caliber shell casing received in connection with that testimony. Officer Moore's testimony, as we outlined above, dealt with the first "shots fired" call to the Hughes street address.

The thrust of appellant's argument under this point is that the evidence in question constituted evidence of an extraneous offense, the prejudicial effect of which exceeded any probative value. Appellant argues that absent such evidence, the jury might have accepted appellant's defense of necessity based upon the investigator's testimony and buttressed by the testimony of Renee Ashley and Diane Champeau. This follows, appellant reasons, because evidence about the 10:20 "shots fired" call provided an opportunity for the jury to infer that appellant was not simply carrying the pistol for his protection but was firing it as well.

In response, the State first argues that by his failure to object to the testimony about the second "shots fired" call, any error in the admission of testimony about the first call was waived. The basis of that contention is the well established rule that where evidence, which is the same as that objected to, is later properly admitted, no

reversible error is shown. *See Woolls v. State*, 665 S.W.2d 455, 470 (Tex.Crim.App. 1983).

We cannot agree that the testimony about the first call is so nearly akin to that about the second call, which resulted in appellant's arrest, as to be within the purview of that rule. The challenged testimony relates to an incident different in time and in participant from that received without objection. The nexus between the two simply is not sufficiently close to justify imposition of the waiver rationale. If the evidence in question was improperly admitted, appellant has not waived his right to complain.

■ The State next questions whether the evidence in question is sufficient to show the commission of an extraneous offense by appellant. In *McKay v. State*, 707 S.W.2d 23 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986), the Court had occasion to discuss a similar question. As relevant here, in that case, a witness was allowed to testify that the license plates on the automobile which McKay was driving at the time of his arrest, were not registered to that car. McKay was charged with the capital murder of another individual. The testimony about the license plates was objected to on the basis that it would show an extraneous offense of theft.

The *McKay* Court held that the testimony was not erroneously admitted. En route to that holding, the Court opined that evidence of an extraneous offense must necessarily involve evidence of prior criminal conduct by the accused. If the evidence fails to show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established. Therefore, the Court said, since the evidence there in question did not show that the vehicle was stolen, nor established that McKay stole the vehicle, nor implicated the vehicle in any misconduct, no improper extraneous offense was shown. *Id.* at 31–32.

The question presented by this point of error is sufficiently analogous to that before the *McKay* Court to make its reasoning and holding applicable here. Moore's testimony did not show that any shots were actually fired, or, if the shell casing was a reasonable indication that shots had been fired at the address, when they were fired, or that appellant fired them. That being the case, no improper extraneous offense was shown and the challenged evidence was not subject to the objection made, *i.e.*, that the evidence was "irrelevant in this case and prejudicial."

Moreover, examination of the record shows that the "shots fired" evidence was not introduced for the purpose of showing the bad character of appellant but rather for the purpose of showing the surrounding circumstances as to why the officers were where they were and the purpose of that presence. The evidence was admissible for that purpose. *See Alto v. State*, 739 S.W.2d 614, 618–19 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd); *Behring v. State*, 739 S.W.2d 504, 506 (Tex.App.—Corpus Christi 1987, pet. ref'd). Appellant's second point is overruled.

■ In his third point, appellant challenges the following jury instruction, namely:

> You are instructed that aggravated assault is a felony involving violence or threatened violence to a person or property.

■ Parenthetically, we note that appellant never stated the basis for the objection to this portion of the charge. The rule is that the specific ground for objection must be stated as a general objection is equivalent to no objection at all. *Murphy v. Waldrip*, 692 S.W.2d 584, 591 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). However, the State does not challenge the sufficiency of the objection, and in the interest of justice, we will consider appellant's challenge.

The instant offense arose by virtue of Texas Penal Code Annotated section 46.05 (Vernon 1989). That section provides that the underlying felony giving rise to the offense of unlawful possession of a firearm by a felon be a felony involving an act of

violence or threatened violence to a person or property.

Unless the underlying felony is one which is violent as a matter of law, the State must prove that the felony did in fact involve violence or the threat of violence to either persons or property. *Ware v. State,* 749 S.W.2d 852, 853–54 (Tex.Crim.App. 1988). In this case, the State did not produce any evidence concerning the circumstances of the underlying offense of aggravated assault. To support this conviction, then, we must hold that aggravated assault does, as a matter of law, involve an act of violence or threatened violence to a person or property.

The statute in force at the time of appellant's conviction in 1979, Texas Penal Code Annotated section 22.02 (Vernon 1974), provided that an aggravated assault was committed if a person committed the offense of assault (as defined in section 22.01 of the Code), and he (1) caused serious bodily injury to another; (2) caused bodily injury to a peace officer; or, (3) used a deadly weapon. Section 22.01, as relevant here, provided that an assault occurred when a person intentionally, knowingly, or recklessly caused bodily injury to another.

The thrust of appellant's argument is that aggravated assault is not always a crime of violence because the assault statute provides for an assault to be committed recklessly. He reasons that an assault recklessly committed may not always be a violent one because the culprit may not have a culpable intent. In support of that proposition, he places primary reliance upon the Court's decision in *Ware v. State, supra.*

In *Ware,* the Court was faced with the question whether the offense of involuntary manslaughter was an act of violence as a matter of law. The Court held that involuntary manslaughter was not always an act of violence because Texas Penal Code section 19.05(a)(2) authorizes conviction for that offense when a death is by an intoxicated driver "by accident or mistake."

En route to its decision, the *Ware* Court noted its prior holding in *Hamilton v. State,* 676 S.W.2d 120 (Tex.Crim.App.1984),

that any crime which involves an act of violence requires a culpable intent on the part of the offender. Since a conviction for involuntary manslaughter would be authorized in some instances for conduct "by accident or mistake," the requisite culpable intent would not be present in those cases. Therefore, the Court concluded, whether an underlying conviction for involuntary manslaughter involved violence in a prosecution such as the instant one, was a matter requiring proof and a jury finding. *Ware v. State,* 749 S.W.2d at 854–55. However, the Court reiterated that when the underlying felony is one which, as a matter of law, always involves an act of violence, in a prosecution such as the one at bar, it is sufficient for the State to prove that the defendant possessed a firearm outside his home, and that he was previously convicted of the prior violent crime.

While appellant equates the "reckless" provision in section 22.01 with the "accident or mistake" provision of the involuntary manslaughter statute, we disagree. Reckless acts or conduct engaged in recklessly are specifically included in Texas Penal Code sections 6.02 (Requirement of Culpability), and 6.03 (Definitions of Culpable Mental States). Thus, it readily appears that such conduct does, by definition, evidence the culpable mental intent the *Ware* Court explicated as a necessary constituent of a crime of violence. The trial court did not err in its instruction and we overrule appellant's third point.

In summary, all of appellant's points are overruled, and, there being no reversible error, the judgment of the trial court is affirmed.