**Robert Emmett ENGLISH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–91–00045–CR.**

Court of Appeals of Texas, Tyler.

Sept. 20, 1991.

Rehearing Denied Nov. 14, 1991.

Discretionary Review Refused Feb. 26, 1992.

**34**

Steve Kattner, Longview, for appellant.

Patrice Savage, Longview, for appellee.

COLLEY, Justice.

On May 8, 1990, appellant's pick-up truck collided with a vehicle operated by Billy Ray Johnson at the intersection of Eastman Road and Young Street in Longview. Johnson was killed in the collision. The evidence shows that both drivers were alcohol-intoxicated at the time of the collision. Blood alcohol tests showed that appellant's blood contained 0.33 grams of alcohol per 100 milliliters, and that Johnson's blood contained 0.20 grams of alcohol per 100 milliliters.

On December 6, 1990, a two-count indictment was returned against appellant. Count I charged him with the offense of involuntary manslaughter. Count II charged him with felony DWI. In both counts, the State pleaded:

> [T]hat during the commission of the offense, [appellant] did then and there use and exhibit a deadly weapon, to-wit: one 1964 model Chevrolet pick-up, which was then and there capable of causing serious bodily injury and death in the manner of its use and intended use,

After presentation of its case-in-chief at the guilt/innocence phase, the State elected to submit the offense charged in Count II of the indictment (DWI). The jury convicted appellant of that offense and having found that appellant had been previously convicted of attempted murder, a felony, assessed his punishment at 20 years confinement and a fine of $5,001.00.[1] The jury also affirmatively found in its punishment verdict: "[w]e, the jury, further find that the Defendant used or exhibited a deadly weapon, to-wit: one 1964 Chevrolet model pick-up during the commission of the offense." This finding was made in response to that portion of the court's punishment charge reading:

> If you further find beyond a reasonable doubt that the Defendant used or exhibited a deadly weapon during the commission of the alleged offense of which you have found him guilty, you will so state in your verdict.

> "Deadly Weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.[2]

. . . . .

By a single point of error, the appellant contends that the court erred in submitting the "deadly weapon" issue to the jury because the evidence was insufficient to support the jury's affirmative finding that "he used a deadly weapon" in the commission of the offense.

---

**1.** *See* Tex.Pen.Code Ann. § 12.42(a) (Vernon 1974).

**2.** *See* Tex.Pen.Code Ann. § 1.07(a)(11)(B) (Vernon 1974).

In addressing the point of error, we must review the evidence in the light most favorable to the finding to determine whether a rational jury could have found beyond a reasonable doubt that the pick-up truck driven by appellant while intoxicated was "in the manner of its use or intended use ... capable of causing death or serious bodily injury." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *Mixon v. State,* 781 S.W.2d 345, 347 (Tex.App.–Houston [14th Dist.] 1989), *aff'd,* 804 S.W.2d 107 (Tex.Cr.App.1991).

The appellant argues under his point of error that there is "no evidence of an improper use" by him of his truck on the occasion in question. He argues that the jury finding that the pick-up by the manner of its "use or intended use" became a deadly weapon finds no support in the evidence. Appellant correctly claims, that in this case, there is no evidence that he ran a red light or that he was speeding at the time of, or immediately before, the collision or that he otherwise operated his truck in a reckless or negligent manner.

The State responds by noting that the evidence shows that appellant had a blood alcohol level of 0.33, and according to expert testimony that persons with that level of intoxication would be near a comatose state, and that the evidence shows that appellant's pick-up truck weighed 2,800 pounds and was therefore capable of "causing serious bodily injury or death to other individuals." The State relies heavily on *Roberts v. State,* 766 S.W.2d 578 (Tex. App.—Austin 1989, no pet.), and *Parrish v. State,* 647 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1982, no pet.). In *Parrish,* the offense was aggravated assault, and the evidence reveals that the defendant attempted to run over the victim with her car; that is, the defendant intentionally used the automobile as a weapon against her victim. In *Roberts,* again the offense was aggravated assault; however, there the "appellant, intoxicated and fleeing a police officer, drove his pick-up truck into an intersection at [speeds of] 80 to 100 miles per hour and collided with a car that was stopped at a red light." *Roberts,* 766 S.W.2d at 579. That collision resulted in serious bodily injury to a "front-seat passenger, as well as the death of the rear-seat passenger." *Id.* The Austin Court, in rejecting appellant's argument that "there was no showing that he ... intended to cause death or serious bodily injury or that he intended to employ his truck as a weapon ...," noted that "[t]here is no requirement in § 1.07a(11)(B) that the defendant intend to cause death or serious bodily injury in order for an instrument to be a deadly weapon." *Id.* But the court in *Roberts* did say that where a vehicle is operated in a "reckless manner, i.e., with an awareness of, but conscience disregard for, a substantial and unjustifiable risk that injuries to another would result," then the vehicle "so used is capable of causing death or serious bodily injury...." *Roberts,* 766 S.W.2d at 580. It thus appears to us that *Parrish* and *Roberts* tend to support the appellant's argument and are of no help to the State in this case. Several[3] courts of appeal have addressed the issue raised by appellant— the application of Tex.Code Crim.Proc.Ann. art. 42.12 § 3g(a)(2) (Vernon Supp.1991) (hereinafter referred to as "Section 3g(a)(2)")[4] and Tex.Code Crim.Proc.Ann. art. 42.18 § 8(b) and (c) (hereinafter re-

---

**3.** *E.g. Moone v. State,* 802 S.W.2d 101, 105 (Tex. App.—Austin 1990, pet. ref'd); *Ortega v. State,* 792 S.W.2d 145 (Tex.App.—Amarillo 1990, pet. ref'd); *Escobar v. State,* 799 S.W.2d 502, 506–507 (Tex.App.—Corpus Christi 1990, no pet.); and *Morgan v. State,* 775 S.W.2d 403 (Tex. App.—Houston [14th Dist.] 1989, no pet.); *Chandler v. State,* 689 S.W.2d 332, 335–336 (Tex. App.—Fort Worth 1985, pet. ref'd).

**4.** Section 3g(a)(2) prohibits the granting of probation "to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Sections 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon an affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon [used] or exhibited was a firearm, the court shall enter that finding in its judgment."

ferred to as "Section 8(b) and (c)").[5]

In another case, *Patterson v. State*, 723 S.W.2d 308 (Tex.App.—Austin 1987), *aff'd*, 769 S.W.2d 938 (Tex.Cr.App.1989) (en banc) (Clinton and Teague, J.J., dissenting), the defendant was convicted of possession of a controlled substance. A search team executing a search warrant at a private residence, found the appellant sitting on a couch in the living room. A loaded .45 caliber revolver was found by the arresting officer "concealed between [appellant's] leg and the end of the couch." *Patterson*, 723 S.W.2d at 311. The officer also found "[appellant's] wallet, ... a pistol 'boot' holding ammunition for a .45 caliber weapon" lying on a table next to the couch. The Austin court overruled appellant's point of error by which he contended that there was "insufficient evidence" to uphold the jury's finding that he " 'used' or 'exhibited' a deadly weapon in the course of possessing the contraband." *Id.* at 315. The court noted that although the point of error was "couched as a 'sufficiency of the evidence' point, appellant's challenge really turns upon a question of law—the correct meaning in law of the word 'used' as it is employed in the foregoing statute [section 3g(a)(2) ]." The court observed that "[t]he scope of art[icle] 42.12 § 3g(a)(2) extends to the use of a deadly weapon during the commission of *any* felony offense; no felonies are excluded." *Patterson*, 723 S.W.2d at 314 (emphasis in original). The Court of Criminal Appeals upheld the Austin court's interpretation of section 3g(a)(2) reading, "[w]hen it is shown that the defendant used ... a deadly weapon during the commission of a felony offense," to mean that "used" "extends ... to *any* employment of a deadly weapon, even simple possession, if such possession *facilitates* the associated felony." *Id.*, 769 S.W.2d at 941 (emphasis on "facilitates" added).

The Austin court concluded that the evidence was sufficient to support the finding that appellant used the firearm during the commission of the offense. The court emphasized that the evidence "shows a peculiar kind of possession of the weapon—it had been loaded and *taken from its holster* so that it was *ready* at hand." *Patterson*, 723 S.W.2d at 315 (emphasis in original). The court also pointed out that the evidence negated any suggestion that there was a "lawful purpose behind the drawn revolver." *Id.* Lastly, the court observed that the "appellant controlled the revolver while in close proximity to the contraband." *Id.* The court finally concluded that rational jurors "could find that appellant 'used' the firearm during the commission of the felony offense ... in a sense that the firearm protected and facilitated appellant's care, custody and management of the contraband." *Id.*

The Texas Court of Criminal Appeals affirmed the judgment of the Austin court. *Patterson v. State*, 769 S.W.2d 938 (Tex.Cr. App.—1989). The Court of Criminal Appeals wrote, "All felonies are theoretically susceptible to an affirmative finding of use or exhibition of a deadly weapon." *Patterson*, 769 S.W.2d at 940. The Court also approved language of the Austin court that the "use of a deadly weapon 'during the commission of a felony offense [refers] ... as well to *any* ... employment of a deadly weapon, even a simple possession, if such possession facilitates the associated felony.' " *Patterson*, 769 S.W.2d at 941, and *Patterson*, 723 S.W.2d at 315, (emphasis in 723 S.W.2d at 315).

Under *Patterson*, 769 S.W.2d 938, the provisions of section 3g(a)(2) and section 8(b) and (c) apply to the felony DWI conviction in this case; however, that Court also expressly approved other language of the

---

5. Section 8(b) and (c) provides that where an affirmative finding is entered in the judgment of conviction under section 3g(a)(2) of a defendant, that defendant (prisoner) "is not eligible for release on parole until his *actual calendar time* served, *without consideration* of good conduct time equals one-fourth of the maximum sentence or 15 calendar years, whichever is less.... All other prisoners shall be eligible for release on parole when their calendar time served *plus good conduct time* equals one-fourth of the maximum sentence or 15 calendar years, whichever is less." Section 8(c) precludes the release "to mandatory supervision" of a state prisoner committed under a judgment of conviction that contains the affirmative findings described in section 3g(a)(2) above.

court of appeals, including the language of that court whereby they concluded that the evidence was sufficient to support the affirmative finding because the appellant had removed the revolver from its holster, placed it next to his leg, "ready for use" to protect his control of the contraband which was nearby, and that the evidence negated any "[suggestion of] a lawful purpose [for the weapon]."

In *Moone v. State,* the appellant was convicted of "burglary of a habitation with the intent to commit sexual assault, TEX. PEN.CODE ANN. §§ 30.02, 22.021 (1989)." (Sexual assault of a thirteen year old female.) In *Moone,* the appellant had a knife which he used to intimidate his victim and cut her underwear. The knife was found on appellant's person when he was arrested. The *Moone* court had little trouble in concluding that the knife was a deadly weapon and was "used" in an attempt to "facilitate the [offense]." *Moone,* 802 S.W.2d at 105.

In *Ortega,* the appellant was convicted of "unlawful possession of a firearm by a felon." *Ortega,* 792 S.W.2d at 146. The appellant contended in *Ortega* that "the trial court erred" in entering a finding that he used a deadly weapon during the commission of the offense. The appellant argued that the intent of the legislature in the enactment in section 8(b) was that the statute would apply only where "the use ... of the weapon [was] in connection with the commission of an offense other than the mere possession of the weapon, i.e., there must be another associated felony." *Ortega,* 792 S.W.2d at 147. Simply stated, the appellant in *Ortega* argued that the statute did not apply to the offense of unlawful possession of the firearm by a felon. TEX.PENAL CODE ANN. § 46.05 (Vernon 1989). The court rejected that contention upon the authority of *Patterson,* 769 S.W.2d 938, and *Alston v. State,* 722 S.W.2d 24 (Tex.App.—Fort Worth 1986, pet. ref'd).[6]

The appellant in *Chandler v. State* was convicted of involuntary manslaughter under TEXAS PENAL CODE ANN. § 19.05. In *Chandler,* appellant was a passenger in a pick-up truck riding with the driver and another passenger. Appellant was seated between the driver and the other passenger. When the truck approached a person (the victim) jogging on the side of the road, the appellant who had been drinking said, "Let's get him," and pulled the steering wheel towards the jogger causing the vehicle to strike and kill the jogger. Appellant argued that because the jury had found him guilty of recklessly causing the death of the victim, that finding "negated" its finding that he "used a deadly weapon in the commission of the offense." The *Chandler* court construed appellant's argument to be: "[T]hat since he was found guilty of recklessly causing bodily injury there was no intent on his part to cause harm or injury to any person, and therefore, the issue of deadly weapon does not apply after a jury finding of involuntary manslaughter." *Chandler,* 689 S.W.2d at 335. The court promptly rejected that argument holding that former article 42.12 § 3f(a)(2), now section 3g(a)(2), applied to the involuntary manslaughter felony offense.

In *Escobar v. State,* the appellant was convicted of murder and attempted murder. The evidence showed in that case that the murder weapon was a baseball bat, and that appellant had in fact intentionally struck the murder victim and the other victim with the bat, or "wooden stick" as the bat was described in the indictment and in the court's charge. The court, following *Patterson,* overruled appellant's point of error by which he asserted that the evidence was insufficient to support the jury finding that he used a deadly weapon in the commission of the offense.

In *Morgan v. State,* the defendant, on his plea of guilty, was convicted by a jury of theft of an automobile. The jury found that appellant used a deadly weapon (the stolen car) in the commission of the theft offense. The evidence in *Morgan* showed that the appellant went to a car dealership and talked to a salesman about purchasing a Porsche. The salesman parked the car,

---

6. *Alston* is virtually identical with *Ortega* on the facts and law.

and got out to switch places with appellant so that appellant could test drive the vehicle. While the salesman was walking around the car to the passenger side, the appellant got into the driver's seat, "revved the engine" and started to drive away. The salesman tried to get inside the vehicle, but could not. The salesman apparently jumped on the rear portion of the vehicle, and although the appellant saw the salesman's predicament he did not stop the vehicle, rather he sped up to 60 or 70 miles per hour and then alternatively "slammed on the brakes" stopping the car "for a few seconds," then began driving "backwards and forwards," accelerating and quickly braking the car. This evidence showed that the salesman was exposed to great danger of physical injury by appellant's conduct. Later in the episode, appellant drove the car at speeds "between sixty-five and eighty m.p.h." with the salesman desperately holding on. A State expert witness testified that based on the facts shown by the evidence, "[appellant] could easily have caused the death of a person riding on the back of the car." *Morgan*, 775 S.W.2d at 406.

As our review of the above authorities, other than *Ortega*, demonstrates, in each of the cases the instrument was used intentionally, recklessly, or negligently, against the victim. Indeed, in *Patterson*, 723 S.W.2d at 308, the court attached critical importance to the facts that the accused intentionally used a deadly weapon per se, a revolver, to protect the contraband, and declared that "used" as that term is employed in section 3g(a)(2), "extends to *any* employment of a deadly weapon, even its simple possession, if such possession *facilitates* the associated felony." *Patterson*, 723 S.W.2d at 315 (emphasis on "facilitates" added). However, after that declaration, the court went on to conclude that rational jurors "could find that appellant 'used' the firearm during the commission of the felony offense ... in a sense that the firearm protected and facilitated [i.e. made easier] appellant's care, custody and management of the contraband." *Id.*

It is common knowledge that in this state each year, many people are killed or seriously injured in automobile collisions as a result of alcohol-intoxicated drivers. It is likewise common knowledge, that all individuals at some level of intoxication in excess of 0.10 grams of alcohol per 100 milliliters of blood lose the normal use of their mental and physical faculties. It cannot be denied that a motor vehicle operated by an intoxicated driver instantly becomes an instrument capable of inflicting death or serious bodily injury on any person, who by chance comes within its path. However, that is not the question before us.

The evidence in all of the cases we have studied reveals some special relationship between the instrument found to be a deadly weapon by reason of the manner of its use and the "associated felony offense" for which the accused was tried.

In *Patterson*, a deadly weapon per se was used to protect the accused's possession of contraband which was the subject of the associated felony. In each of the four cases involving the use of a motor vehicle, *Parrish*, *Roberts*, *Morgan*, and *Chandler*, the vehicle was intentionally, recklessly or negligently used as a weapon by the accused.

In the instant case, the evidence of appellant's intoxication while driving his vehicle is undisputed, indeed overwhelming; however, the direct evidence shows only that a collision occurred in an intersection at which the flow of traffic in each direction is controlled by signal lights. The State was unable to produce an eyewitness to testify which driver had the right of way (green light), immediately before impact. No evidence was presented by the State that at the time of, or immediately preceding impact, appellant ran a red light, was speeding or otherwise operating his vehicle in a reckless or negligent manner. There was testimony from a State witness [7] that appellant braked his truck before impact, leaving visible skid marks on Eastman Road. Neither Officer Wherling, nor any

---

7. This witness, Officer Robert Wherling, testified that he considered the skid marks only to determine "the direction of travel" of the two vehicles involved in the collision.

other witness, gave testimony regarding the length of the skid marks left by appellant's vehicle. Nor did he or any other witness give testimony of the speed of either vehicle immediately before impact. Wherling did testify that, based on his investigation at the scene, appellant was south-bound in the "outside" lane of Eastman Road and that the deceased Billy Ray Johnson was east-bound in the "inside" lane of Young Street immediately before impact, and that the collision occurred "basically in the middle of the intersection ... [of] Young and Eastman...." The witness also testified that when he arrived at the scene at about 12:54 a.m. on May 8, 1990, he saw appellant sitting on the "curb" at the intersection. He later talked with appellant at the hospital as well. Officer Wherling stated that the entire front portion of appellant's truck struck "the left ... side" at the driver's side door of the car driven by Johnson.

Applying the standard of review enunciated in *Jackson v. Virginia* and *Mixon v. State*, 804 S.W.2d 107, and utilizing the "exclusion of reasonable hypothesis, raised by the circumstantial evidence," *see Carlsen v. State*, 654 S.W.2d 444, 448–449 (Tex. Cr.App.1983), we now turn to decide the issue confronting us. *See also Flores v. State*, 551 S.W.2d 364, 367 (Tex.Cr.App. 1977). In short, we look at the evidence in the light most favorable to the finding to determine whether the direct and circumstantial evidence excludes to a moral certainty the reasonable hypothesis that the appellant had the right of way (green light) at the intersection and that the intoxicated victim, Johnson, drove his vehicle through a red light on Young Street into the path of appellant's truck immediately before the collision.

From our careful review of all the evidence, we conclude that such reasonable hypothesis has not been excluded by the evidence. Hence, the jury's finding that appellant exhibited or used a deadly weapon during the commission of the felony DWI is not a rational finding. Therefore, we sustain the point of error, and reform the judgment by deleting therefrom the affirmative finding entered therein that ap-

pellant used or exhibited a deadly weapon during the commission of the offense, and the judgment as reformed is affirmed.