

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00225-CR

———————————————

TREVOR DALLAS BLANKENSHIP, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1776728

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Trevor Dallas Blankenship pleaded guilty to evading arrest or detention with a vehicle. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). Blankenship was placed in the Veterans Treatment Court (VTC), a pretrial diversion program. After being revoked from the VTC program following an alleged assault of his girlfriend, the trial court adjudicated Blankenship guilty of evading arrest or detention with a vehicle and found true that he had used the vehicle as a deadly weapon. The trial court later denied Blankenship's motion to withdraw his guilty plea—which had been based on his contention that he "did not plead true to the deadly weapon enhancement"—and it sentenced him to six years' confinement. In three issues on appeal, Blankenship argues that (1) the trial court's deadly weapon finding rendered his plea involuntary, (2) the trial court should have allowed him to withdraw his guilty plea, and (3) the evidence was insufficient to support the trial court's deadly weapon finding. We will affirm.

## II. BACKGROUND

### A. Blankenship's Indictment, His Guilty Plea, and His Placement in the VTC Program

In August 2023, Blankenship was indicted for evading arrest or detention with a vehicle stemming from an incident that had occurred on April 20, 2023. The

indictment included a deadly weapon allegation that Blankenship had used the vehicle as a deadly weapon during the offense.

On December 6, 2023, Blankenship signed documents pleading guilty to evading arrest or detention with a vehicle. The plea paperwork explicitly mentioned that "[t]he State does not waive the deadly weapon finding notice, if applicable." It also provided that, if convicted, Blankenship faced the following range of punishment: "THIRD-DEGREE FELONY: Imprisonment for a term of not more than 10 years or less than 2 years in the Texas Department of Criminal Justice; and in addition, a fine not to exceed $10,000 may be assessed." In the written waivers that were part of the paperwork, Blankenship represented that his plea was "knowingly, freely, and voluntarily entered" and that "[n]o one ha[d] threatened, coerced, forced, persuaded[,] or promised [him] anything in exchange for [his] plea." His attorney also stated in the plea paperwork that he was satisfied that Blankenship "has intelligently, knowingly, and voluntarily waived his rights and will enter a guilty plea understanding the consequences thereof."

In connection with his plea, Blankenship signed a judicial confession. Notably, the following preprinted language was crossed out of the confession portion of the paperwork:

> Any and all deadly weapon allegations are true and correct. All other affirmative findings made by the Court pursuant to this plea agreement are true and correct. I further admit my guilt on any unadjudicated offenses set forth in the plea recommendation set out above, and request

3

the Court to take each into account in determining my sentence for the instant offense(s).[1]

Next to the crossed-out language were initials that correspond to Blankenship and his attorney who signed the paperwork, as well as the initials "NA."

Following his plea, Blankenship was placed into the VTC program.

## B. The June 6, 2025 and June 9, 2025 Hearings on Blankenship's Termination from the VTC Program

On June 6, 2025, the trial court conducted a hearing on Blankenship's termination from the VTC program due to his alleged assault of a woman he was dating. At the outset of that hearing, the trial court and counsel for both sides had a lengthy exchange regarding the purpose of the hearing, the next steps regarding Blankenship's case, and whether Blankenship had pleaded true to the deadly weapon enhancement. During that discussion, the trial court noted that Blankenship had already pled guilty and that "[p]rocedurally[,] he cannot withdraw his plea." Blankenship's counsel responded, "That's not where I'm going, Judge." Blankenship's counsel then clarified that his argument was addressing what Blankenship had—and had not—pled to; Blankenship's counsel told the trial court that "it was abundantly clear that [Blankenship] did not plead true to the deadly weapon enhancement." The hearing was later recessed and resumed on June 9, 2025.

---

[1]Other language was also crossed out in the plea paperwork, including language referencing a sex offender registration requirement, a victim impact statement, and a conviction of a misdemeanor involving family violence.

When the hearing resumed, the trial court considered testimony regarding Blankenship's plea. Blankenship called as a witness the magistrate judge who had accepted his plea. The magistrate judge testified that she had no independent recollection of Blankenship's plea. On cross-examination, the State showed the magistrate judge a document titled "District Clerk Certificate of Proceedings" that she had signed in Blankenship's case.[2] That document stated, "12/6/23: Open plea of guilty; deadly weapon – true; plea accepted by court; Veteran admitted to Veteran Court Program; Surety Bond satisfied."

Blankenship also called as a witness a clerk who had been present when his plea was made. The clerk's testimony was very brief; the trial court sustained the State's objections to defense questions about the plea agreement on the grounds that "the document speaks for itself." Blankenship also called as a witness his attorney who had signed the plea paperwork. After making a record of the attorney's qualifications, Blankenship passed the witness, and the State had no questions for the witness.

Blankenship then rested as to that portion of the hearing. The trial court asked Blankenship's counsel, "Make sure I understand. So you're not challenging the voluntariness of the plea or the deadly weapon plea; is that correct?" Blankenship's counsel responded, "I am prepared to say that we're challenging only the deadly-weapon finding, whether that was agreed based upon the paperwork."

---

[2]That document was admitted into evidence at the June 9, 2025 hearing.

5

Later during the hearing, the State called Blankenship's ex-girlfriend and the ex-girlfriend's daughter to testify about a June 16, 2024 incident regarding Blankenship's assault of the ex-girlfriend.[3]  The State also called Joseph Campbell, a police officer with the North Richland Hills Police Department, to testify about Blankenship's underlying offense for evading arrest or detention with a vehicle.

Officer Campbell testified that around 3:02 a.m. on April 20, 2023, he was dispatched to a vehicle on Rufe Snow Drive south of the intersection of Mid Cities Boulevard.  Officer Campbell stated that that portion of Rufe Snow is "a seven-lane road, three lanes each direction with a center turn lane."  Officer Campbell observed that the vehicle—which was being driving by Blankenship—was traveling the wrong way, noting that "[t]he vehicle was in the inside southbound lane when it was facing northbound at the intersection."  Officer Campbell attempted to make a traffic stop, but Blankenship continued driving against the opposite lanes of traffic.  Officer Campbell indicated that Blankenship's vehicle "continued driving mostly against the far left curb . . . of [the] seven-lane roadway" and that "a few blocks later, [Blankenship] eventually yielded in [a] parking lot."  Officer Campbell testified that Blankenship's vehicle was traveling above the posted speed limit during the incident, noting that he had paced the vehicle as traveling fifty-five miles per hour in a forty

---

[3]We do not detail their testimony because it is not pertinent to the issues raised in this appeal.  *See* Tex. R. App. P. 47.1.

mile per hour zone. According to Officer Campbell, authorities later determined that Blankenship was intoxicated during the commission of the offense.

A video from the dashcam of Officer Campbell's police vehicle was admitted into evidence at the hearing. In the beginning of that video, Blankenship's vehicle is stopped at an intersection facing northbound in the inside southbound lane. A southbound vehicle is stopped with its hazard lights on in the southbound lane next to Blankenship's vehicle. Another southbound vehicle drives past the stopped vehicles in the outer southbound lane. Officer Campbell's police vehicle is stopped behind Blankenship's vehicle at the intersection facing northbound. A woman—who appears to be the driver of the southbound vehicle that has its hazard lights on—is outside of her vehicle talking to Officer Campbell.

The video then shows Blankenship's vehicle slowly making its way through the intersection, with the traffic light at the intersection changing from green to yellow to red as Blankenship's vehicle gradually traverses through it. After Blankenship's vehicle goes through the intersection, it quickly accelerates speed and continues down the road going the wrong way. Officer Campbell then activates his police vehicle's siren and lights and pursues Blankenship. As Officer Campbell crosses the intersection on a red light, a westbound police vehicle approaches the intersection on a green light and has to stop to avoid Officer Campbell's vehicle.

Officer Campbell pursues Blankenship while Blankenship travels northbound in the outer southbound lane. After approximately forty seconds, Blankenship stops

7

his vehicle. But as Officer Campbell pulls up behind it, Blankenship's vehicle takes off again, continuing northbound in the outer southbound lane. Officer Campbell pursues. After approximately thirty seconds, Blankenship turns his vehicle into a gas station. Blankenship eventually parks his vehicle in the gas station's parking lot, and he is subsequently placed under arrest.

Following Officer Campbell's testimony, the State rested. The trial court asked Blankenship's counsel if he wanted a Presentence Investigation Report (PSI) to be prepared, and Blankenship's counsel answered affirmatively. The trial court then stated that it had found Blankenship guilty and that the deadly weapon allegation was true.

## C. Blankenship's June 13, 2025 Motion to Withdraw His Plea and the Trial Court's June 30, 2025 Sentencing Hearing

On June 13, 2025, Blankenship filed a motion to withdraw his plea. In that motion, he argued that he "did not plead true to the deadly weapon enhancement" and that "as such, [his] plea was not entered into freely and voluntarily."

On June 30, 2025, the trial court held a sentencing hearing. At the outset of the hearing, the trial court asked if Blankenship had any objection to the court receiving the PSI that had been prepared. Blankenship's counsel stated that he had no objection. Blankenship's counsel then brought to the court's attention that Blankenship had filed a motion to withdraw his plea on June 13, 2025. When asked by the trial court whether that motion had been ruled on previously, Blankenship's

counsel stated that it had not been ruled on, noting, "Previously[,] I do not believe that we affirmatively exercised his right to withdraw his plea." After hearing argument from both sides regarding the motion, the trial court denied it.[4]

Blankenship then called two witnesses to testify—a case manager for the VTC court program and Blankenship's cousin[5]—and following that testimony, both sides rested and closed. The trial court then sentenced Blankenship to six years' confinement for the offense of evading arrest or detention with a vehicle. In the trial court's written judgment, the court stated that Blankenship had "made [his] plea freely and voluntarily[] and was aware of the consequence of the plea." This appeal followed.

### III. DISCUSSION

### A. Blankenship's Complaint Regarding the Voluntariness of His Plea

In his first issue, Blankenship argues that he intended to plead guilty to evading arrest without an entry of a deadly weapon finding and that the trial court's deadly weapon finding rendered his plea involuntary.

---

[4]That same day, the trial court signed a written order denying Blankenship's motion to withdraw his plea.

[5]Because it is not relevant to the issues raised on appeal, we do not detail their testimony. *See* Tex. R. App. P. 47.1.

### 1. Applicable Law

To be valid, a guilty plea must be entered knowingly and voluntarily. Tex. Code Crim. Proc. Ann. art. 26.13(b); *Ex parte Broussard*, 517 S.W.3d 814, 816 (Tex. Crim. App. 2017). A defendant must have an understanding of the law in relation to the facts surrounding his guilty plea. *Broussard*, 517 S.W.3d at 816. "A guilty plea is valid only if it is 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* (quoting *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013)). We must examine the entire record to determine the voluntariness of a defendant's plea. *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975); *Dunn v. State*, No. 02-18-00082-CR, 2019 WL 1388546, at *2 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op., not designated for publication).

When a defendant has been duly admonished, there is a prima facie showing that the guilty plea was entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Perez v. State*, No. 02-24-00160-CR, 2025 WL 494645, at *2 (Tex. App.—Fort Worth Feb. 13, 2025, no pet.) (mem. op., not designated for publication). A defendant who attested that he understood the nature of his plea and that his plea was voluntary bears the "heavy burden" on appeal to show that his plea was involuntary. *Johnson v. State*, No. 02-23-00090-CR, 2024 WL 1318238, at *2 (Tex. App.—Fort Worth Mar. 28, 2024, pet. ref'd) (mem. op., not designated for publication); *Thomas v. State*, 615 S.W.3d 552, 569 (Tex. App.—Houston [1st Dist.] 2020, no pet.). To meet that burden, the defendant must

affirmatively show that he was not aware of the consequences of his plea and that he was misled or harmed by the trial court's erroneous admonishment. *Johnson*, 2024 WL 1318238, at *2; *Thomas*, 615 S.W.3d at 569.

### 2. Analysis

In his brief, Blankenship concedes that his "plea was certainly voluntary as to his guilt for the offense of evading arrest in a motor vehicle." But he contends that "the record in this case reflects that [he] had no intention of pleading true or otherwise admitting that he [had] used a deadly weapon during the commission of that offense." Thus, he contends that his plea was involuntary because he did not understand that "his refusal to admit to using a deadly weapon could result in a deadly weapon finding." He points to the struck language in the plea paperwork concerning the deadly weapon allegation as evidence that his plea was made involuntarily.

But just because that language was struck from the plea paperwork does not indicate that Blankenship's plea was involuntary. No evidence was presented to indicate that Blankenship would not have entered the plea if he had known that a deadly weapon finding was possible. And he should have known that a deadly weapon finding was possible because his plea paperwork specifically provided—in language that was not stricken—that "[t]he State does not waive the deadly weapon finding notice, if applicable." Courts routinely hold that a trial court's entry of a deadly weapon finding does not violate a plea agreement when the plea paperwork does not evidence an agreement concerning the entry of a deadly weapon. *See, e.g.,*

11

*State v. Weems*, No. 05-02-00239-CR, 2002 WL 1551904, at *2 (Tex. App.—Dallas July 16, 2002, no pet.) (not designated for publication) (noting that "courts have held the entry of a deadly weapon finding does not violate the plea agreement" in situations where a defendant "pleads guilty pursuant to a plea agreement that does not include a term concerning the entry of a deadly weapon"); *Lister v. State*, 24 S.W.3d 525, 527 (Tex. App.—Corpus Christi 2000, pet. ref'd) ("We hold that where no mention is made in the record of any plea bargain agreement concerning a finding of the use of a deadly weapon the trial court has within its discretion the power to make, or not make, such a finding."); *Alexander v. State*, 868 S.W.2d 356, 361 (Tex. App.—Dallas 1993, no pet.) ("A plea agreement silent on deadly weapon findings will not prevent a trial court from making such a finding.").

Moreover, other evidence in the record indicates that Blankenship's plea was made voluntarily. His plea paperwork states that he was admonished by the trial court, which is prima facie evidence that his plea was entered knowingly and voluntarily. *See Martinez*, 981 S.W.2d at 197; *Perez*, 2025 WL 494645, at *2. In addition, Blankenship stated in the plea paperwork that his plea was "knowingly, freely, and voluntarily entered" and that "[n]o one ha[d] threatened, coerced, forced, persuaded[,] or promised [him] anything in exchange for [his] plea." His attorney also indicated in the plea paperwork that he was satisfied that Blankenship "has intelligently, knowingly, and voluntarily waived his rights and will enter a guilty plea understanding the consequences thereof." And the "District Clerk Certificate of

12

Proceedings" that was admitted into evidence reflected that the deadly weapon finding had been found true on Blankenship's plea and that the plea had been accepted by the magistrate judge on December 6, 2023. *See Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1985) (op. on reh'g) ("[T]he recitations in the records of the trial court . . . are binding in the absence of direct proof of their falsity.").

Given the foregoing, and assuming without deciding that Blankenship has not waived his right to bring this issue on appeal,[6] we hold that Blankenship has not carried his "heavy burden" of showing that his plea was involuntary. *See Johnson*, 2024 WL 1318238, at *2; *Thomas*, 615 S.W.3d at 569. We overrule Blankenship's first issue.

## B. Blankenship's Complaint Regarding His Attempt to Withdraw His Plea

In his second issue, Blankenship argues that the trial court should have allowed him to withdraw his guilty plea.

---

[6]In its brief, the State argues that Blankenship has waived his first issue. In support of that argument, the State points to representations contained in the plea paperwork in which Blankenship stated that he was giving up and waiving "all pretrial motions that may have been filed in [his] case" and "any and all rights of appeal in this case." The State also pointed to the exchange between the trial court and Blankenship's counsel at the June 9, 2025 hearing when the trial court asked whether Blankenship was challenging the voluntariness of the plea or the deadly weapon plea, and Blankenship's counsel responded, "I am prepared to say that we're challenging only the deadly-weapon finding, whether that was agreed based upon the paperwork."

### 1. The Law

A defendant may withdraw his guilty plea as a matter of right without assigning a reason at any time before judgment has been pronounced or the case has been taken under advisement. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. [Panel Op.] 1979); *Perkins v. State*, No. 02-07-258-CR, 2008 WL 2002739, at *1 (Tex. App.—Fort Worth May 8, 2008, pet. ref'd) (mem. op., not designated for publication). However, when the defendant decides to withdraw his guilty plea after the trial court pronounces judgment or takes the case under advisement, the withdrawal of such plea is within the sound discretion of the trial court. *Jackson*, 590 S.W.2d at 515; *Grant v. State*, 172 S.W.3d 98, 100 (Tex. App.—Texarkana 2005, no pet.). The passing of a case for a PSI is considered taking the case under advisement. *Jackson*, 590 S.W.2d at 515; *Grant*, 172 S.W.3d at 100. An abuse of discretion is shown only when the trial court's ruling lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Grant*, 172 S.W.3d at 100.

### 2. Analysis

In his brief, Blankenship argues that he had the ability to withdraw his guilty plea as a matter of right. We disagree. The trial court took the case under advisement at the June 9, 2025 hearing when it ordered the PSI. *See Jackson*, 590 S.W.2d at 515; *Grant*, 172 S.W.3d at 100. But Blankenship did not file his motion to withdraw his guilty plea until June 13, 2025. And, based on the record before us, he did not present that motion to the trial court or obtain a ruling on it until the June 30, 2025

14

sentencing hearing. Thus, Blankenship's ability to withdraw his guilty plea was not a matter of right but was within the discretion of the trial court. *See Jackson*, 590 S.W.2d at 515; *Grant*, 172 S.W.3d at 100.

Blankenship suggests that we should not look at the June 13, 2025 filing date of his motion to withdraw for purposes of establishing when he first expressed his desire to withdraw his plea, contending that he had raised the issue at the June 6, 2025 and the June 9, 2025 hearings.[7] The record belies that contention. Our review of the record does not demonstrate that Blankenship sought the withdrawal of his guilty plea at any time prior to the filing of his June 13, 2025 motion to withdraw his plea. Indeed, at the June 6, 2025 hearing, when the trial court noted that Blankenship had already pled guilty and that "[p]rocedurally[,] he cannot withdraw his plea,"

---

[7]Blankenship points to *Mendez v. State*, 138 S.W.3d 334 (Tex. Crim. App. 2004), to support this proposition. In *Mendez*, the Texas Court of Criminal Appeals stated, "We have held that some defendants, although not explicitly requesting to change their pleas from guilty to not guilty, have conveyed sufficiently to the trial court a desire to have the issue of guilt decided by the jury." *Id.* at 345. Blankenship's reliance on that statement is misplaced. *Mendez* involved the issue of whether a defendant can change his plea of guilty to not guilty when evidence inconsistent with guilt is introduced at a jury trial. *Id.* at 336 ("In this case[,] we resolve conflicts in our cases that have existed for over 75 years on the question of a defendant's changing a plea of guilty to a plea of not guilty when evidence that is inconsistent with guilt is introduced in a jury trial."). Those circumstances are not present here. The issue here is whether Blankenship sought the withdrawal of his plea prior to the trial court's taking the case under advisement, an issue of timeliness. In *Mendez*, the court recognized the importance of timeliness with respect to a defendant's changing of his plea, stating, "We hold that a defendant has a right on *timely* request to change the plea, but that a court has no duty to do it on the court's own motion." *Id.* at 336 (emphasis added).

15

Blankenship's counsel stated, "That's not where I'm going, Judge." Moreover, at the June 30, 2025 sentencing hearing, Blankenship's counsel stated that Blankenship had not previously "affirmatively exercised his right to withdraw his plea." At that hearing, when pressed by the trial court on whether Blankenship's ability to withdraw his plea was a matter of right or within the trial court's discretion, his attorney agreed with the court that "[a]t this point[,] it's not a matter of right" but "a matter of discretion for the Court." Thus, Blankenship's ability to withdraw his plea was within the trial court's discretion. *See Jackson*, 590 S.W.2d at 515; *Grant*, 172 S.W.3d at 100.

In his brief, Blankenship concedes that, assuming that the first time he sought to withdraw his plea was when he filed his motion on June 13, 2025, "the trial court had discretion to deny it." And Blankenship offers no argument as to why the trial court would have abused its discretion by denying the motion to withdraw. Given the circumstances present here—the plea paperwork's representations by Blankenship and his counsel that Blankenship had intelligently, knowingly, and voluntarily pled guilty; the "District Clerk Certificate of Proceedings" reflecting that Blankenship had been found guilty and that the deadly weapon finding had been found true; and no evidence being presented to suggest that Blankenship would not have entered the plea if he had known that a deadly weapon finding was possible—and assuming without deciding that Blankenship has not waived his right to bring this issue on appeal,[8] the

---

[8]In its brief, the State argues that Blankenship has waived his second issue. It contends that the VTC program is comparable to a contract, that Blankenship was

16

trial court was within its discretion to deny Blankenship's motion to withdraw. *See Montgomery*, 810 S.W.2d at 391; *Grant*, 172 S.W.3d at 100.

We overrule Blankenship's second issue.

## C. Blankenship's Complaint Regarding the Sufficiency of the Evidence

In his third issue, Blankenship argues that the evidence is insufficient to support the trial court's deadly weapon finding under Article 1.15 of the Texas Code of Criminal Procedure.

### 1. Standard of Review

Article 1.15 of the Texas Code of Criminal Procedure requires the State to offer sufficient evidence to support a judgment based on a guilty plea in a felony case. Tex. Code Crim. Proc. Ann. art. 1.15; *Wiggs v. State*, No. 10-22-00055-CR, 2023 WL 398667, at *2 (Tex. App.—Waco Jan. 25, 2023, no pet.) (mem. op., not designated for publication). Pursuant to Article 1.15, the State must "introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same." Tex. Code Crim. Proc. Ann. art. 1.15. Our review is limited to a determination of whether the State introduced evidence of guilt embracing every essential element of the offense charged.

---

required to plead guilty as a condition of enrollment in the program, and that by failing to successfully complete the program, Blankenship has waived his right to change or withdraw his plea.

*Clark v. State*, No. 06-13-00156-CR, 2014 WL 2152005, at *2 (Tex. App.—Texarkana May 21, 2014, no pet.) (mem. op., not designated for publication); *Chindaphone v. State*, 241 S.W.3d 217, 219 (Tex. App.—Fort Worth 2007, pet. ref'd).

### 2. Applicable Law

By statute, a motor vehicle is not a deadly weapon per se, but it can be a deadly weapon if its "manner of . . . use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(17)(B); *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019).

To determine whether evidence sufficiently shows that a vehicle was used as a deadly weapon, we (1) evaluate the manner in which the defendant used the motor vehicle during the felony and (2) consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009); *Gordon v. State*, No. 02-23-00101-CR, 2024 WL 2760913, at *4 (Tex. App.—Fort Worth May 30, 2024, pet. ref'd) (mem. op., not designated for publication). As to the first element, "[a] motor vehicle may be a deadly weapon where 'the vehicle was intentionally, recklessly, or negligently used as a weapon by the accused.'" *Nguyen v. State*, 506 S.W.3d 69, 76 (Tex. App.—Texarkana 2016, pet. ref'd) (quoting *English v. State*, 828 S.W.2d 33, 38 (Tex. App.—Tyler 1991, pet. ref'd)). As to the second element, while the "danger posed to motorists must be actual, and not simply hypothetical, the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require

18

[an] appellant to intentionally strike another vehicle to justify a deadly weapon finding." *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

### 3. Analysis

Blankenship argues that "Officer Campbell's testimony and the [dash-cam] video are not sufficient to constitute proof of—even at the low standard of [A]rticle 1.15—the allegation that [Blankenship] used his car as a deadly weapon during the commission of the offense of evading arrest or detention." We disagree.

As to the first element needed to support the deadly weapon finding—the manner in which the defendant used the motor vehicle during the felony—the record reflects that Blankenship was driving his vehicle at a high rate of speed while intoxicated and that he was driving in the opposite direction of traffic. Such evidence supports a finding that Blankenship operated his vehicle in a reckless and dangerous manner. *See Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) (mem. op.) (considering among factors in determining recklessness or dangerousness whether driver was intoxicated, speeding, or disregarding traffic signs); *Drichas*, 175 S.W.3d at 798 (holding that appellant's manner of using his truck "posed a danger to pursuing officers and other motorists that was more than simply hypothetical . . . [but] was real" when he drove his truck "on the wrong side of the highway").

As to the second element—whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury—Blankenship contends that the

19

evidence shows that "there were no other cars on the road at the time" and that "it appears as though [Blankenship was] driving in the shoulder of the road as he look[ed] for a place to exit the street." Thus, according to Blankenship, "the State's proffered evidence did not tend to show that [his] car was a deadly weapon." The evidence belies Blankenship's argument.

Officer Campbell testified that Blankenship was driving the wrong way on Rufe Snow Drive, and video from Officer Campbell's dashcam confirmed it. While Officer Campbell attempted to stop Blankenship's vehicle, Blankenship continued driving against the opposite lanes of traffic. Blankenship was intoxicated while he was driving, and according to Officer Campbell, Blankenship was also speeding. Contrary to Blankenship's assertion that "there were no other cars on the road at the time," Officer Campbell's police vehicle was on the road during the chase. *See Moore v. State*, No. 06-10-00173-CR, 2011 WL 3274840, at *3 (Tex. App.—Texarkana Aug. 2, 2011, no pet.) (mem. op., not designated for publication) ("[P]olice officers should not be excluded from the class of persons capable of being endangered by the driver of a fleeing vehicle.").

Moreover, in the seconds immediately prior to the chase—at a point when Blankenship's vehicle was facing the wrong way—a car with its blinkers on was stopped next to him, and another car drove by. *See Drichas*, 175 S.W.3d at 799 ("[A] deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the

defendant when the defendant drove in a dangerous manner."); *Mangiafico v. State*, No. 05-21-00601-CR, 2023 WL 4861783, at *4 (Tex. App.—Dallas July 31, 2023, pet. ref'd) (mem. op., not designated for publication) (considering evidence that "[i]n the twenty seconds that followed [the appellant's] collision with the concrete barrier, six other vehicles and a tank truck passed" in analysis affirming trial court's deadly weapon finding as to the appellant's vehicle during police chase). And notably, after Officer Campbell activated his vehicle's lights and siren and began a northbound pursuit of Blankenship, a westbound police vehicle approaching the intersection on a green light was forced to stop as Officer Campbell's vehicle passed through the intersection. *See Meredith v. State*, No. 03-02-00688-CR, 2003 WL 22023350, at *3 (Tex. App.—Austin Aug. 29, 2003, pet. ref'd) (mem. op., not designated for publication) (affirming deadly weapon finding when evidence reflected that "[t]he danger to others was not hypothetical—three other drivers actually had to take evasive action").

Based on our review of the evidence, we hold that the State introduced evidence of guilt embracing every essential element of the deadly weapon allegation. *See* Tex. Code Crim. Proc. Ann. art. 1.15; *Clark*, 2014 WL 2152005, at *2; *Chindaphone*, 241 S.W.3d at 219. We overrule Blankenship's third issue.

## IV. CONCLUSION

Having overruled Blankenship's three issues, we affirm the trial court's judgment.

21

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 22, 2026